# Bucher *versus* Dillsburg and Mechanicsburg Railroad Company.

1. In a suit against a subscriber for stock of a railroad, under the Act of April 4th 1868, the plaintiffs having given in evidence a certified copy of the articles of association, with the name of defendant to them, filed and recorded with the Secretary of the Commonwealth, as required by the act : *Held,* that defendant might give evidence that he signed a blank paper for the stock, under an arrangement with the agent obtaining his subscription that it should be not binding, nor " the heading," being the articles of association, be attached to it until it should be presented to him and approved, and that it never was presented to him or approved.

2. Unless defendant's subscription was attached to the articles with his assent, he would not be bound by it.

3. No subscription to stock under the Act of 1868 is valid, whether before or after the incorporation, without the payment of ten per cent. on the amount subscribed. Per SHARSWOOD and WILLIAMS, JJ.

May 26th 1874.    Before SHARSWOOD, WILLIAMS, MERCUR and GORDON, JJ.

Error to the Court of Common Pleas of *Cumberland county :* Of May Term 1874, No. 61.

This was an action of assumpsit, brought to April Term 1872 of the court below, by The Dillsburg & Mechanicsburg Railroad Company against Robert C. Bucher.

The plaintiffs were incorporated under the Railroad Law of April 4th 1868, Pamph. L. 62, 2 Br. Purd. 1211.

The first section of the law authorizes any number of citizens of Pennsylvania, not less than nine, to form a company to construct and operate a railroad, and for that purpose to make and sign articles of association, stating the name of the company, the number of years it is to continue, the places from and to which it is to be constructed, its length, the amount of capital stock (which shall not be less than $10,000 per mile), the number of shares, the names and places of residence of the president and directors, who are to manage the affairs for one year and till others are chosen. The articles of association, after being acknowledged, &c., as provided by the act, may be filed in the office of the Secretary of the Commonwealth, and recorded, &c. ; and then the articles of association shall be the charter of the company.

By subsequent sections the articles shall not be filed and recorded in the office of the Secretary of the Commonwealth until $9000 per mile be subscribed and 10 per cent. paid thereon, in good faith, in cash to the directors. A copy of the articles of association, certified by the Secretary of the Commonwealth, shall be evidence of the incorporation and of the facts therein stated.

By the 4th section, in case the whole stock is not subscribed when the articles of association are filed and recorded, the directors may keep open books for subscription, " and shall continue to receive subscriptions until the whole capital stock is sub-

scribed. At the time of subscribing, every subscriber shall pay to the directors 10 per cent. of the amount subscribed by him, in money; and no subscription shall be received or taken without such payment."

The plaintiffs' declaration set out in the first count the articles of association, viz., that the subscribers to them had associated for the purpose of constructing and operating a railroad; the length "contemplated to be now built is about seven miles from the borough of Mechanicsburg in, &c., to Dillsburg in," &c.; the capital stock to be $350,000, in shares of $50 each. The articles contained the duration of the corporation, the names of the officers, &c., and concluded:—

"And we have hereunto subscribed our names respectively with the places of our residence, and the number of shares we each agree to take in said company. Witness our hands the 2d day of September, A. D. 1871.

| "Names. | Places of Residence. | No. of Shares. |
|---|---|---|
| * * * * | * * * * | * * |
| Robert C. Bucher. | Mechanicsburg. | 5." |

The narr. then averred that defendant agreed to pay $250 for the stock, and had not.

The case was tried January 22d 1874, before Junkin, P. J.

The plaintiffs gave in evidence a copy of the articles of association, filed November 1st 1871, certified by the Secretary of the Commonwealth; also evidence of ·due notice of calls for payment of all the instalments at different times, the last being May 1st 1872. They then rested.

The defendant testified:—

"Brinks called on me sometime in September, and he stated that he wanted me to take a certain amount of stock in the Dillsburg and Mechanicsburg Railroad. He had in his possession a blank paper, without a heading, with some signatures on it; he told me that the proper papers were over at Dillsburg; that they had been sent there, and had not been returned, and stated that the papers with the heading would be returned, and he then wished my signature to the papers; he said it required my signature to them and payment of ten per cent. in order to bind me to pay the stock. He said they would be returned, and then I would be asked to subscribe them. There was nothing said about annexing the papers to any heading; that this was only intended to find out who would subscribe; that to make it binding the ten per cent. must be paid down. I knew that the object desired was a subscription to the road, and there was a column ruled for shares and the number of shares were set out in it, opposite my name. I did sign on the conditions stated by Brinks, that the forwarding men were to sign, and if they did not, I would not go into it, or be bound; and the other forwarding men were to sign, and if they

[Bucher *v.* Dillsburg & Mechanicsburg Railroad Co.]

did not, he would not go into it or be bound; and the other forwarding men did not go in and subscribe. I never paid the ten per cent.; saw a notice that it was called on for payment. I never subscribed to nor saw the articles of association."

The defendant then offered to prove that after said company was organized, they went on to build a railroad, not from the borough of Mechanicsburg, but from Silver Spring township, a mile outside of the limits of the borough of Mechanicsburg; that when he subscribed, a blank sheet of paper was offered to him, and it was stated to him that if he put his name down it would not have any binding force; that the articles of association would be presented to him, when they returned from Dillsburg, for his signature, and that he would not be bound until he signed them and paid ten per cent. of the subscription-money in good faith, and that the sheet of paper on which he put his name should not be attached to any heading, until he actually saw the heading, consented to it, and subscribed it; and that he never did see any heading to the paper, and never consented that the paper on which he put his name should be attached to these articles of association."

The offer was objected to by the plaintiffs.

PER CURIAM.—"The certificate of the secretary of the Commonwealth of the recording of the articles of the association, under the Act of 4th of April 1868, is conclusive, and in this issue cannot be inquired into. The 2d section requires that $9000 per mile be subscribed and 10 per cent. paid in; but this does not require that if more than $9000 per mile is subscribed the 10 per cent. must be paid on the excess also. We think the spirit of the act is that, there must be $9000 per mile and 10 per cent. paid on that, not at the time of the subscription, but before the articles, &c., are recorded, and that the 10 per centum required to be paid at time of subscription in the 4th section are those made after recording the articles of association, to supply the deficiency in the stock allowed. But whether the defendant subscribed at all or not may be gone into; and as to that part of the offer it is admitted. As to the alleged failure of the association to commence road at borough of Mechanicsburg we have nothing to do."

A bill of exceptions was sealed for defendant.

The defendant then called A. H. Brinks, and offered to prove that Judge Watts, president of the association, at a public meeting of citizens in reference to the organization, announced, when the citizens were asked to subscribe to the articles of association, that the meeting then held was merely a preliminary meeting, and that whatever they then subscribed would have no binding effect until they were called upon, and actually paid ten per cent. of their subscriptions, and that any of them could withdraw their subscriptions before they paid the ten per cent.; that this meeting was merely intended to see what could be done in the premises; that the wit-

ness afterwards called on defendant and presented a paper to him without any heading, and asked him to put his name down for five shares, or $250, assuring him that the paper should not be attached to any heading, without he first saw it, and consented to it, and that it should not bind him unless he first consented to the headings and paid in ten per cent. of the subscription; and that he would have to sign the articles of association before he was bound.

The plaintiffs objected to the offer; the court rejected all the offer except what related to the actual subscription by the defendant, and sealed a bill of exceptions.

The witness testified: "The paper I took to Bucher was six sheets of paper eyeleted together; it had no heading; the heading had been taken to Dillsburg, and I waited three days for its return. He objected to putting his name down. I told him the heading was at Dillsburg, and he could see it when it came back; that when it would come back, I would show it to him, and then he could let his name stand or take it off if he was not satisfied. I never showed Bucher the heading of the subscription, for I never saw it since myself. I told Bucher that I wanted him to subscribe to the railroad, that we were now going around and trying to get the names of the people to subscriptions. The number of shares was set out, to wit, five shares. He wanted to put down $250, but I told him to put down the shares."

Defendant then proposed to ask the witness whether he told the defendant, at the time and before he subscribed the $250, that Judge Watts said the subscription would not be binding unless he paid his ten per cent. on it.

Defendant also offered to prove by Judge Watts that, at the time they were about applying for the charter of this railroad, lacking the number of shares and amount necessary to secure the charter, witness subscribed for 193 shares at $50 per share, anticipating that the Cumberland Valley Railroad Company, which was interested in the project, would take it off his hands, and that he, as president of the Cumberland Valley Railroad Company, directed the treasurer of said railroad company to pay $9650, the full amount of the one hundred and ninety-three shares, so as to enable them to secure the charter; and this was done, and the charter thereby secured; and this was the mode in which the ten per cent. was paid on $9000, a mile of the road.

Both offers were rejected and several bills of exception sealed.

The following are points of the defendant with their answers:—

"1. If the jury believe that R. C. Bucher, the defendant, subscribed his name to a blank paper without any heading to it, and with the express agreement that the paper on which his name was written should not be binding unless he subscribed the original articles of association which were then at Dillsburg, and the original articles were never presented to him for his signature, he is not a

[Bucher *v.* Dillsburg & Mechanicsburg Railroad Co.]

subscriber to these articles of association, and the plaintiffs cannot recover."

Answer: "We instruct you that if Mr. Bucher signed a paper without a heading, subscribing five shares ($250) to the capital stock of this railroad, knowing and intending when so doing to take that amount of the stock, and that paper was afterwards attached to the articles of association, along with others, he is bound, and you should find for the plaintiff.

"We instruct you that all conditions of every kind upon which Mr. Bucher subscribed are void in law and the subscriptions good. The law, wisely, does not recognise conditional subscription to stock, because if it were allowed, it would operate as a fraud upon bonâ fide subscribers. One would subscribe and pay, and another would subscribe and not pay, because he had subscribed conditionally. Thus gross fraud would be practised, and you see the law is wise when it says that no such condition shall be effectual to release the subscriber."

"2. At the time of giving his signature, as stated on the first point, as there was no company organized, and no natural or artificial person with whom he could contract, Mr. Bucher's signature was not binding on him for the money now sought to be recovered, and the plaintiffs cannot recover."

Answer: "The Act of 1868, undoubtedly, when it authorizes these associations, must intend that the subscriber should be bound before organization, otherwise the subscribers may play fast and loose and organization would become impossible. If Mr. Bucher subscribed to a paper intended to be a subscription, although without a heading, and that paper was appended to the articles, he is bound; it is a subscription which the law holds good. Stripping it of the conditions, which the law does for good reasons, there remains but one question, to wit: Did he sign and subscribe for five shares of stock, and was the paper so signed by him appended to the articles of association? And if he did, he must pay."

The verdict was for the plaintiffs for $279.13.

The defendant took a writ of error, and assigned for error the rejection of his offers of evidence and the answers to his points.

*W. H. Miller* (with whom was *H. Newsham*), for plaintiff in error.—The company not having constructed the railroad to Mechanicsburg, subscriptions made on condition that the road should go there are not binding: Manheim, P. & L. Turnp. Co. *v.* Arndt, 7 Casey 317; Com. *v.* Pittsburg, 5 Wright 282. The subscription being made on the assurance by Judge Watts and the agent taking it that the subscribers would not be bound until the 10 per cent. were paid, they would not be bound if it was not paid: Custar *v.* Titusville Gas & W. Co., 13 P. F. Smith 385; Crossman *v.* Penrose Ferry Bridge Co., 2 Casey 69; Campbell *v.* Mc-

[Bucher *v.* Dillsburg & Mechanicsburg Railroad Co.]

Clenachan, 6 S. & R. 171; Miller *v.* Henderson, 10 Id. 290; Stubbs *v.* King, 14 Id. 207; Renshaw *v.* Gans, 7 Barr 117; Ayer's Appeal, 4 Casey 179. The 10 per cent. should have been first paid to make the subscription binding: Hibernia Turnpike *v.* Henderson, 8 S. & R. 219; Erie & Waterford Plank Road *v.* Brown, 1 Casey 156. Parol evidence was admissible to show that the heading was not to be attached to the blank paper signed by defendant till he had seen and assented to it: Rearich *v.* Swinehart, 1 Jones 238; Hurst *v.* Kirkbride (cited in Wallace *v.* Baker), 1 Binn. 616; Hain *v.* Kalbach, 14 S. & R. 159.

*J. Hays* (with whom was *R. M. Henderson*), for defendants in error.—Where a company is incorporated, a condition annexed to a subscription to its stock may be enforced: Crossman *v.* Penrose Ferry Bridge Co., 2 Casey 69; Coil *v.* Pittsburg College, 4 Wright 439; McConahy *v.* Turnpike Co., 1 Penna. R. 426; Custar *v.* Titusville Gas & Water Company, 13 P. F. Smith 381. The subscriptions in these cases were made before the company was incorporated. The Act of 1868 provides for the associators receiving the subscriptions. The principles governing in the one case apply to the other. They are the same. The stock must be subscribed before the Commonwealth will part with the franchise: Pittsburg & Steubenville Railroad Co. *v.* Biggar, 10 Casey 455; Pittsburg & Connellsville Railroad Co. *v.* Stewart, 5 Wright 58; Bedford Railroad Co. *v.* Bowser, 12 Id. 34. It matters not that the papers signed by the parties were or were not without headings. They intended to subscribe to the stock of the Dillsburg and Mechanicsburg Railroad Co. The jury found that they did subscribe. A verbal subscription is binding: Ryerss *v.* The Congregation of Blossburg, 9 Casey 114. If the charter required the company to fix one of its termini in the borough of Mechanicsburg, and if it failed so to do, it would be a violation of the corporate franchise. Individuals cannot complain of this. The right to do so is confined to the Commonwealth: Buck Mountain Coal Co. *v.* Lehigh Coal & Nav. Co., 14 Wright 91; Sparhawk *v.* Union Passenger Railway Co., 4 P. F. Smith 401; Cumberland Valley Railroad Co.'s Appeal, 12 Id. 227. So with reference to the non-payment of the 10 per cent. at the time of subscription: Cochran *v.* Arnold, 8 P. F. Smith 405.

Mr. Justice GORDON delivered the opinion of the court, June 4th 1874.

The proposition made by the defendant to prove that his subscription to the stock of the proposed railroad was made upon a blank sheet of paper, with the distinct arrangement with Brinks, who acted as agent in taking up the subscriptions, that it should not have any binding force, or be attached to the "heading," until

[Bucher *v.* Dillsburg & Mechanicsburg Railroad Co.]

he had an opportunity of inspecting and approving that instrument, was material, and the court should have admitted it.

The Act of April 4th 1868, sect. 1, under which this railroad company was organized, reads as follows: "Any number of citizens of Pennsylvania, not less than nine, may form a company for the purpose of constructing, maintaining and operating a railroad for public use * * *; and for that purpose may make and sign articles of association, in which shall be stated the name of the company; the number of years the same is to continue; the places from and to which the road is to be constructed, or maintained and operated; the length of such road as near as may be, and the name of each county in the state through or into which it is made or intended to be made; the amount of capital stock of the company, which shall not be less than $10,000 for every mile constructed or proposed to be constructed, and the number of shares of which said capital stock shall consist; and the names and places of residence of a president, and not less than six nor more than twelve directors of the company, who shall manage its affairs for the first year and until others are chosen in their places. Each subscriber to such articles of association shall subscribe thereto his name, place of residence, and the number of shares of stock he agrees to take in said company," &c.

It will thus be seen that the "heading," about which Brinks and the defendant spoke, was nothing less than the articles of association required by the above-recited act. It was therefore a matter of grave import to the subscriber that he should know to what his name was to be appended. Moreover, it was doubtless the intention of the legislature that such subscriber should know and carefully consider the paper thus presented for his signature. For these matters involve not merely private rights, but also affect the public weal, and hence the parties to them are required to act with due circumspection and within prescribed lines.

It is therefore certain that, unless Bucher's subscription was attached to the articles of association, with his assent for that purpose first had and obtained, it was of no force whatever, and could not bind him.

The judgment of the court below is therefore reversed, and a new *venire* awarded.

Mr. Justice SHARSWOOD and Mr. Justice WILLIAMS delivered the following concurring opinion :—

We concur in the reversal of the judgment for the reasons given in the foregoing opinion, and we also think that there can be no valid subscription to the stock of a company incorporated under the Act of 4th of April 1868, Pamph. L. 62, without the payment by each subscriber of 10 per cent. on the amount subscribed, whether the subscription is made before or after the incorporation of the company.