The Newport and Sherman Valley Railroad Company, Appellant, *v.* John Seager, Administrator of William Seager, deceased.

*Contract—Nudum pactum—Subscription to future issue of bonds.*

The agreement in this case to subscribe to bonds to be issued in futuro by a railroad company does not constitute an enforceable contract. It is rather an expression of an intention than a contract, being at most but a promise to lend in futuro and is nudum pactum.

Argued March 16, 1898.    Appeal, No. 29, March T., 1898, by plaintiff, from judgment of C. P. Perry Co., Jan. T., 1896, No. 23, for defendant non obstante veredicto.    Before RICE, P. J., WICKHAM, BEAVER, REEDER, ORLADY, SMITH and PORTER, JJ.    Affirmed.    ORLADY, J., dissents.

Assumpsit.    Before LYONS, P. J.

The following facts appear from the record:

Counsel for the plaintiff offers paper marked No. 1, April 16, 1897, J. F. C., it being admitted that the said paper is the subscription paper and that the same was signed by Wm. Seager, and the name Wm. Seager as written upon this paper is the signature of Wm. Seager's subscription for one bond of the first mortgage bonds of the Newport & Sherman Valley Railroad Company, which subscription list is as follows:

Subscription to first mortgage bonds of Newport & Sherman Valley Railroad Company.

We, the undersigned, do hereby subscribe to the first mortgage bonds of Newport & Sherman Valley Railroad Company, the number of bonds set opposite our names of par value $500 each:

| | No. of Bonds. | Am't. | When to be paid for. |
|---|---|---|---|
| Sept. 19, 1893, Frank A. Gutshall, | 1 | $500 | Jan. 10, 1894. |
| Sept. 20, "  Geo. M. Loy, paid by note, | 1 | 500 | June 20, |
| Sept. 20, "  Jacob Loy, paid by note, | 1 | 500 | July 1, 1894. |

| | | | No. of Bonds. | Am't. | When to be paid for. |
|---|---|---|---|---|---|
| Sept. 20, | " | Jacob Wentz, paid by note, | 1 | 500 | May 1, |
| Sept. 20, | " | Catherine Wentz, | 1 | 500 | July 1, 1894. |
| | | Geo. his × mark. Kern, | 1 | 500 | |
| | | Wm. his × mark. Seager, | 1 | 500 | |
| May 22, | " | Thomas Martin, note, | 1 | 500 | Sept. 1, 1894. |
| Aug. 1, | " | Gutshall & Bower, paid by note, | 1 | 500 | |
| Aug. 24, | " | E. A. McLaughlin, note, | 1 | 500 | |
| Feb. 6, | 1895, | James Boyd, Hbg. Pd. | 10 | 5,000 | |
| | | B. P. Hook, | 2 | 1,000 | |

It is also admitted that the amount and character of the bond described in that paper was tendered to the personal representative of Wm. Seager at the time fixed for the delivery of said bond, and that the same was refused, and the tender is continued and now made in open court.

Also admitted that the bond has not been accepted and has not been paid for.

Plaintiff rests.

Verdict for plaintiff for $507.30. The court subsequently entered judgment for the defendant non obstante veredicto, and filed the following opinion:

At the trial all the facts in evidence were admitted. Counsel for plaintiff stated that unless the plaintiff was entitled to recover the price of the bond or its par value with interest which the defendant's intestate had subscribed for, he did not want a verdict in damages for the difference between the market value of the bond and the price agreed to be paid therefor. And no evidence was offered to show what the difference, if any, there was. For this reason a verdict was directed for the plaintiff for the amount claimed and the question reserved whether under all the evidence the plaintiff was entitled to recover.

The Newport & Sherman Valley Railroad Company exe-

cuted a mortgage upon its property for the sum of $125,000 to secure the payment of two hundred and fifty bonds of $500 each of the said railroad company. One of these bonds the defendant's intestate, William Seager, had subscribed for September 20, 1893, to be paid for July 1, 1894. He died before the time arrived when by the terms of the subscription the bond was to be paid for. The bond was never delivered to him. Subsequently the bond, or one of the bonds of the said railroad company was tendered to the defendant, his personal representative, and the price demanded of him and said tender was renewed at the trial. The defendant refused to accept the bond tendered and also refused to pay for it. Hence this action. No particular bond was subscribed for by number or description, nor does it appear from the evidence whether the mortgage had been executed or that the bonds were in existence at the time that William Seager signed said subscription paper. Any one of the two hundred and fifty bonds was equal to any other as all were of the same denominations or value. No title to any particular bond passed by the subscription. There was no appropriation of any particular bond to the said William Seager at any time. The contract was executory. The mortgage bonds of a railroad company are negotiable paper and pass by delivery: Mason v. Frick, 105 Pa. 162. They are the subject of bargain and sale just as any other personal property and are sold daily in the exchanges and markets. In a sale of personal property where the title has not passed and the purchaser fails to comply with the contract and refuses to accept the thing purchased the rule generally adopted as the measure of damages is the difference between the contract price and the market price of the article at the time when and the place where it should have been accepted: Sedgwick on Damages (7th ed.), 595, note B, citing Gordon v. Norris, 49 N. H. 376; Collins v. DeLaporte, 115 Mass. 159, and other cases; 21 Am. & Eng. Ency. of Law, 578, and cases cited in note 2. A different rule obtains in some states, as in Dustan v. McAndrew, 44 N. Y. 72, where it was held that the vendor of personal property in a suit against the vendee for not taking and paying for the property has the choice, ordinarily, of either one of three methods to indemnify himself: 1. He may store or retain the property for the vendee and sue him for the entire purchase

price.   2.  He may sell the property acting as the agent for this purpose of the vendee and recover the difference between the contract price and the price obtained on such resale.   3.  He may keep the property as his own and recover the difference between the market price at the time and place of delivery and the contract price. But no Pennsylvania case has been cited, and I am unable to find any, that sustains or adopts the first of the above stated remedies, the one sought to be applied in this case.  The rule adopted in Pennsylvania is the one hereinbefore referred to, unless the goods sold are specific in their character, namely: That the measure of damages is the difference between the contract price and the market value at the time and place where the articles sold are to be delivered: Laubach v. Laubach, 73 Pa. 387; Tindle's Appeal, 77 Pa. 201; Tompkins v. Haas, 2 Pa. 74; Ashcom v. Smith, 2 P. & W. 211; Girard v. Taggart, 5 Serg. & R. 19; Andrews v. Hoover, 8 Watts, 239; Schnebly v. Shirtcliff, 7 Phila. 236; Unexcelled Fire Works Co. v. Polites, 130 Pa. 536; Jones v. Jennings Bros., 168 Pa. 493; Guillon v. Earnshaw, 169 Pa. 463; Brown & Co. v. Mc-Caffrey, 3 Pa. Superior. Ct. 431.   Under these authorities the plaintiff is not entitled to recover the price of the bond and as that is all that was claimed or could be recovered under the pleadings in the case, judgment should be entered for the defendant.

Judgment for defendant non obstante veredicto.  Plaintiff appealed.

*Error assigned* was in not entering judgment upon the verdict for the plaintiff.

*William H. Sponsler*, for appellant.

*Chas. H. Smiley*, for appellee.

OPINION BY PORTER, J., April 25, 1898:

By the plaintiff's statement of claim and by the opinion filed by the court below, this action seems to have been originally instituted on the basis of a sale of the bond.   It is clear that the paper writing signed by the defendant's decedent will not support such a contention.   No particular bond was set apart

or purchased. No bond was issued or delivered. Under these circumstances, there can be no recovery as for the sale of a chattel.

Apparently the plaintiff has shifted his ground and here claims to be entitled to recover the subscription price of an unissued bond. He places his reliance upon the case of S. & E. Railroad Co. v. Cooper, 33 Pa. 278. In that case, there was a sale made of the bonds of a canal company, by a railroad company to a third person. The bonds were already issued, and delivered to the railroad company. They were therefore vendible chattels. This marks a fundamental distinction between the case cited and that at bar.

Further, however, it is urged that the opinion in that case indicates that a proceeding at law will lie for the subscription price of bonds. The proceeding was in equity. The answer admitted the contract to buy the bonds, and averred willingness to fulfill the same if the bonds were valid. No objection was raised by the defendant to the jurisdiction of the court. In order, as we conceive, that no misconstruction might be placed upon the fact that the court proceeded to decide the case in equity, it is said in the opinion: "Though we do not regard the case as a proper one for the application of this equitable form of remedy, yet the nisi prius has jurisdiction of the cause of action and it may give redress in the equity form, if the defendant does not demur to the form." There is nothing here to indicate that specific performance may be enforced in a common-law proceeding, on a subscription to unissued bonds, the defendant objecting.

The question here then is, can the estate of William Seager be held on his subscription as shown by the document which is signed? The latter does not indicate to whom the subscription was made. The allegation is that it was to the railroad company. The only evidence of this is the bringing of the suit. Assuming it, however, to be true, the agreement amounts to nothing more than a promise to lend the sum of $500 to the railroad company at a future day, and to take one of the company's bonds as the evidence of and security for the loan. No consideration for the promise is made to appear. The paper does not indicate that the several names thereto were appended each in consideration of the others. As said by Chief Justice

BLACK referring to a subscription to capital stock in Strasburg Railroad v. Echternacht, 21 Pa. 220, it "cannot be made out from the paper that the agreement of the defendant was the motive of the others for taking stock."

Nor does the fact that the loan was to be made in aid of a public enterprise raise a consideration. While the construction of the railroad may have been incidentally to benefit the public generally, its primary purpose was profit for stockholders. A railroad or other corporation has a right to borrow money for its legitimate corporate purposes within the limits set by legislation, and to issue bonds or other evidences of indebtedness therefor, but it has certainly no higher rights as a borrower than has the private individual.

The apparent difficulty in this case is due in part to the skill of counsel, and in part to the analogy which at first seems to exist between a subscription to bonds and a subscription to capital stock. The latter stands on a totally different basis from the former. An enforceable subscription to capital stock is founded on a signature to the recorded articles of association upon which the corporation is based, under legislative provisions: Garrett v. Railroad Co., 78 Pa. 465. This document clearly indicates to the several subscribers the mutuality of the enterprise. The total joint subscriptions create the new entity. The purpose is thus palpably inherently mutual. More than this, however, "these matters involve not merely private rights but public weal:" Bucher v. Railroad Co., 76 Pa. 312. The subscriptions to stock are recorded with the articles of Association and form not only the basis upon the faith of which the franchise is secured, but also the capital upon the credit of which the company trades. The difference in the status of the two kinds of subscription to corporate enterprise is thus clearly marked. The particular paper before us does not in our opinion constitute an enforceable obligation. It is rather an expression of intention than a contract. It is at most but a promise to lend in futuro and is nudum pactum.

The judgment of the court below is therefore affirmed.

ORLADY, J., dissents.