## OTIS ET AL. *v.* CULLUM, RECEIVER.

1. Under authority of acts of the legislature of Kansas, the city of Topeka issued certain bonds payable to a party named, or bearer. They became the property of a bank, which put them upon the market, and disposed of them. This court having decided that the legislature had no power to pass the acts, and that the bonds were void, the purchasers brought suit on the ground of failure of consideration to recover the amount paid for them. *Held,* that, as the bank gave no warranty, it cannot be charged with a liability it did not assume.

2. The vendor of such securities is liable *ex delicto* for bad faith, and *ex contractu* there is an implied warranty on his part that they belong to him, and are not forgeries. Where there is no express stipulation, there is no liability beyond this.

ERROR to the Circuit Court of the United States for the District of Kansas.

*Mr. Alfred Ennis* for the plaintiff in error.

*Mr. George R. Peck, contra.*

MR. JUSTICE SWAYNE delivered the opinion of the court.

This case presents but a single point for consideration. In the court below, the defendant demurred to the plaintiffs' petition. The court sustained the demurrer. The plaintiffs elected to stand by it. The court thereupon gave judgment for the defendant.

It is not alleged that there was any fraud on the part of the bank or its agent in selling the bonds in question: on the contrary, their good faith is expressly admitted. The plaintiffs' declaration, or petition as it is called, is not framed upon the theory of bad faith, and a recovery is not sought upon that ground.

The representations made by the agent of the bank to the plaintiffs when they bought the bonds are largely set out; but while it is alleged they were made in good faith, and believed by both parties to be true, it is not averred that they were intended to be, or were understood by either party to be, a warranty. The points of fraud and warranty may, therefore, be laid out of view. They are in no sense elements in the case. This simplifies the character of the controversy. With these

considerations eliminated, what is left of the case may be stated in a few words.

The legislature of Kansas passed two acts, under which the city of Topeka was authorized to issue bonds for certain specified purposes, the amount in each case to be within the limit prescribed. A hundred coupon bonds of one thousand dollars each, payable to a party named or bearer, were executed, and delivered to that party. They became the property of the First National Bank of Topeka. That bank put them upon the market, and disposed of them. Eighteen of them were sold to the plaintiffs in error for the sum of $12,852, and the residue to another party. There was default in the payment of interest. The other party brought suit. This court held that the legislature had no power to pass the acts, and that the bonds were, therefore, void. *Loan Association* v. *Topeka*, 20 Wall. 655. This suit was brought by the plaintiffs in error to recover from the receiver the amount paid to the bank for the eighteen bonds, with interest upon that sum. The ground relied upon is failure of consideration. The question presented for our determination is, whether, upon this state of facts, they have a valid cause of action.

In *Lambert* v. *Heath*, 15 Mees. & Wels. 486, the defendant bought for the plaintiff certain " certificates of Kentish-coast railway-scrip," and received from him the money for them. Subsequently the directors repudiated the scrip upon the ground that it had been issued by the secretary without authority. The enterprise to which it related was abandoned. The action, which was for money had and received, was thereupon brought to recover back what had been paid for the scrip. The court put it to the jury to say whether the scrip bought was " real Kentish railway-scrip." A verdict was found for the plaintiff upon this issue. A new trial was moved for, the defendant insisting that the court had misdirected the jury. After hearing the argument, the court said, " The question is simply this: Was what the parties bought in the market Kentish-coast railway-scrip? It appears that it was signed by the secretary of the company; and if this was the only Kentish-coast railway-scrip in the market, as appears to have been the case, and one person chooses to sell, and another to buy, that then the latter

has got all that he contracted to buy. That was the question for the jury; but it was not so left to them. The rule must, therefore, be absolute for a new trial."

The judges were unanimous.

Here, also, the plaintiffs in error got exactly what they intended to buy, and did buy. They took no guaranty. They are seeking to recover, as it were, upon one, while none exists. They are not clothed with the rights which such a stipulation would have given them. Not having taken it, they cannot have the benefit of it. The bank cannot be charged with a liability which it did not assume.

Such securities throng the channels of commerce, which they are made to seek, and where they find their market. They pass from hand to hand like bank-notes. The seller is liable *ex delicto* for bad faith; and *ex contractu* there is an implied warranty on his part that they belong to him, and that they are not forgeries. Where there is no express stipulation, there is no liability beyond this. If the buyer desires special protection, he must take a guaranty. He can dictate its terms, and refuse to buy unless it be given. If not taken, he cannot occupy the vantage-ground upon which it would have placed him.

It would be unreasonably harsh to hold all those through whose hands such instruments may have passed liable according to the principles which the plaintiffs in error insist shall be applied in this case.    *Judgment affirmed.*