## PECK COLORADO CO. v. STRATTON.

(Circuit Court, D. Colorado. June 9, 1899.)

1. MONEY RECEIVED—COMPLAINT—GENERAL ISSUE—SPECIAL DEFENSES—EVIDENCE.

The general issue in an action for money received to the use of the plaintiff puts in issue all facts from which the legal inference arises that the money was received to the use of plaintiff, but it is proper for the plaintiff to allege the circumstances under which the money was received by defendant, and, when he does so, he is held in his proof to the transaction as pleaded, and no special defenses not applicable to such facts can be set up.

2. SALE—ACTION FOR PRICE—FAILURE OF CONSIDERATION.

There is not a failure of consideration for a promise to pay the purchase price of stock in a corporation where the buyer receives the stock, though it proves to be worthless, nor will the fact that agreements made by the seller, which have not been fulfilled, constituted additional considerations for the purchase avail to defeat an action for the price of the stock, where the value of such considerations is unliquidated, and no particular part of the money to be paid under the agreements was apportioned to them.

3. SAME—WORTHLESS STOCK.

The fact that stock in a corporation purchased by defendant proved to be worthless is no defense to an action for the price, in the absence of fraud or a specific warranty.

On Demurrer to Answer.

Thomas A. Banning, Orlando H. Manning, and Carpenter & Mc-Bird, for plaintiff.

J. W. Ady, Wolcott & Vaile, and C. W. Waterman, for defendant.

MARSHALL, District Judge. The plaintiff brings its action to recover from the defendant money had and received to its use. In the complaint it is alleged "that on, to wit, the 7th day of March, 1896, at Colorado Springs, in the county of El Paso, state of Colorado, the defendant received from the plaintiff, as the agent and assistant treasurer of said plaintiff, the sum of one hundred thousand dollars ($100,000), to the use of the said plaintiff." To this complaint the defendant has filed three separate defenses. The first is, in substance, the general issue. The second and third defenses set up a contract between one Orrin B. Peck and the defendant, by the terms of which the defendant, among other things, agreed to pay $100,000, to be placed in the treasury of the plaintiff company, to be used and paid out for the use of the company in the state of Colorado, from time to time, as needed. A failure of the consideration of this contract is attempted to be stated, and the further fact that the plaintiff, on its organization, had knowledge that there was no consideration therefor. To these two last defenses the plaintiff has interposed a general demurrer.

It is evident that no failure of the consideration of the contract between the defendant and Orrin B. Peck would justify the defendant in retaining the money received by him from the plaintiff as its agent and treasurer. Having received such money, the defendant could only justify its retention by virtue of his relations to the plaintiff. He could not claim a right to it by any title antagonistic to the plaintiff until he had first returned the money to the plaintiff, or disposed of it in accordance with its order. This principle is not denied by the defendant, but it is claimed in his behalf that the words, "from the plaintiff, as agent and treasurer of said plaintiff," are surplusage; that the plaintiff, on a trial, might give in evidence as the foundation of its claim the contract between the defendant and Peck; and that, therefore, the defendant should be permitted to plead the failure of the consideration of that contract. If we admit the premise, the conclusion of this argument would seem to follow. Upon the general issue in an action for money received to the use of the plaintiff the defendant may defend himself by everything that shows that the plaintiff ex æquo et bono is not, and never was, entitled to the whole of his demand, or any part of it. The general issue operates as a denial of the facts which make a receipt of money a receipt to the plaintiff's use. In Clark v. Dignam, 3 Mees. & W. 478, Parke, B., said: "It all arises on the general issue. The defendant disputes all the facts from which the legal inference arises that the money was had and received to the use of the plaintiff." Owen v. Challis, 6 Man., G. & S. 121; Williams v. Vines, 6 Adol. & E. (N. S.) 355; Eddy v. Smith, 13 Wend. 488; Moses v. Macferlan, 2 Burrows, 1010. But it is perfectly proper for the plaintiff to so frame the count as to state the circumstances under which the money was received by the defendant. In some cases this is required. For instance, in Virginia, in actions against sheriffs for money received by them by virtue of their office, the nature of the transaction is required to be stated in the declaration, so as to distinguish it from a private debt or contract, in order to prevent sur-

prise. Overton v. Hudson, 2 Wash. 172. Having so stated the circumstances, it cannot be successfully contended that the plaintiff should not be held to a proof of the transaction pleaded. The very object of stating in the complaint the particular facts is to warn the defendant of the special transaction; and since the averment of the receipt of the money by the defendant is material, and of the substance of the cause of action, the further allegation of the manner of that receipt, and the particular circumstances thereof, become a matter of essential description, and cannot be treated as surplusage.

If this conclusion be incorrect, it still follows that the demurrer must be sustained to both of these defenses. The second defense sets up, first, a contract between the defendant and Orrin B. Peck, dated February 5, 1896, by which Peck agreed to grant to the defendant the license to use, in El Paso county, Colo., a certain patented process for the reduction and concentration of ores, and also agreed to erect on land to be furnished by the defendant a mill for the treatment of ores with said process for the purpose of treating the ores of a mine owned by the defendant in that county, in consideration of which the defendant agreed to make to Peck certain payments. The defense proceeds to allege that at the time, and for the purpose of deceiving the defendant, Peck made to him various representations as to the efficiency of the process for the treatment of the particular ores found in the defendant's mine, and that such efficiency had been demonstrated by experiments theretofore made on similar ores; and also that he (Peck) would return to the state of Illinois, and organize a corporation, and vest it with the right to use the said patented process throughout the state of Colorado except in El Paso county, and that the defendant should be admitted to the company so to be organized as a stockholder to the extent of one-fourth of its capital stock at the par value thereof. But it is not alleged that the defendant at this time agreed to become a stockholder in the plaintiff corporation. The defense proceeds to the effect that upon the 7th day of March, 1896, in pursuance of the arrangement of February 5, 1896, and as a part of that transaction, the defendant and Peck entered into a contract, the material part of which is as follows:

"Colorado Springs, Colorado, March 7, 1896.

"I have this day purchased of Orrin B. Peck twenty-five hundred shares, of one hundred dollars each, of the capital stock of the Peck Colorado Company, of Chicago, Ill., at par, being one-fourth of the capital stock of said company, a corporation of the state of Illinois, and I have paid to him on same fifty thousand dollars in cash and one hundred thousand dollars to be placed in the treasury of said company, to be used and paid out for the use of said company in said state, from time to time, as needed, in full payment for fifteen hundred of said shares, and for the remaining one thousand shares I am to pay the sum of one hundred thousand dollars in payments at the time and in the amounts as follows, viz. fifty thousand on or before six months from this date, and the remaining fifty thousand dollars on or before January 1st, A. D. 1897."

This contract was signed by the defendant, and assented to by Peck; and it is alleged that the $100,000 sought to be recovered in this action is the particular $100,000 which, by the terms of this

contract, were to be placed by the defendant in the treasury of the Peck Colorado Company. It is further alleged that the only property owned by the corporation was the right to use the patented process in question in the state of Colorado outside of El Paso county; that this right and the process itself were worthless; that Peck failed to erect the mill which, by the contract of February 5, 1896, he agreed to erect for the treatment of the ores of the defendant's mine; and that the representations made by him with respect to that process and its efficiency were untrue, but not that they were known by Peck to be untrue when he made them; and that, therefore, the consideration for the contract of March 7, 1896, has wholly failed. The third defense sets up the contract between Peck and the defendant of February 5, 1896, and the various representations made by Peck with reference to the patented process, as the consideration for the contract of March 7, 1896, which is set out at length in said defense.. It then alleges that said considerations have wholly failed. It sufficiently appears in each of these defenses that the consideration for the promise to pay $100,000 to be placed in the treasury of the plaintiff company, was the transfer to the defendant of 1,500 shares of the capital stock of the company. At that time the company was formed, and it is alleged that it then owned the right to use the patented process which the defendant contemplated would be the basis of the corporation. The stock was the definite thing that. he purchased, and he received the consideration selected by him. As distinguished from the consideration, the defendant seeks to set up the motive of the contract, and then to show that his expectation of deriving valuable benefits from this purchase, which expectation was inspired by Peck, has not been realized; but such motive is not to be confounded with the consideration of the contract. Philpot v. Gruninger, 14 Wall. 570. If it be admitted that the defendant has well pleaded that there were considerations for his promise in addition to the transfer of the shares, and that such considerations have failed, still, as no specific part of the money to be paid by him was apportioned to these considerations, and their value is not a mere matter of computation, but is entirely unliquidated, no failure of consideration is shown, if the stock purchased was in fact transferred to the defendant. The general principle, as stated in 1 Benj. Sales, § 499, is as follows: "But there is not a failure of consideration when the buyer has received that which he really intended to buy, although the thing bought should turn out worthless." And in support of this the author cites the case of Lambert v. Heath, 15 Mees. & W. 487. In that case the defendant was a stockbroker, who was employed by the plaintiff to purchase certain Kentish Coast Railway scrip. After the scrip was purchased and delivered to the plaintiff, and the defendant paid therefor, it turned out to have been issued without authority, and was, therefore, worthless. Thereupon the plaintiff sued to recover the sum paid by him for it. A verdict having been returned for the plaintiff, a new trial was granted on the ground that the proof showed that the scrip delivered to plaintiff was the only known scrip of the railway, and had been, for several months, the subject of sale and

purchase in the market, and that the buyer had got what he really intended to buy, and therefore could not claim a failure of consideration. In the case of Otis v. Cullum, 92 U. S. 447, the supreme court of the United States quoted Lambert v. Heath with approval, and on its authority held that, where a bank sold on the market certain bonds issued by the city of Topeka, payable to bearer, which bonds were invalid for want of authority in the city to issue them, the purchasers suing the bank for the recovery of the money paid therefor on the ground of failure of consideration could not succeed, because, although the bonds were worthless, they obtained the specific thing they contracted to purchase. In this case it is not contended that the stock sold to the defendant was invalid, nor that Peck did not transfer a good title to it. This being so, in the absence of fraud or specific warranty, the defendant must be held to pay the contract price. The demurrer will be sustained.