BUSCH et al. v. STROMBERG–CARLSON TELEPHONE MFG. CO.

(Circuit Court of Appeals, Eighth Circuit. October 12, 1914.)

*(Syllabus by the Court.)*

1. APPEAL AND ERROR (§ 1011*)—DECISIONS REVIEWABLE—CONFLICTING EVIDENCE.

The decisions of questions of fact upon the weight of conflicting evidence in the trial of an action at law without a jury are not reviewable in the national courts.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–3989; Dec. Dig. § 1011.*]

2. CORPORATIONS (§ 472*)—SUBSCRIPTION AGREEMENT—CONSTRUCTION—ACTION AGAINST SUBSCRIBER—DEFENSE—"UNDERWRITING."

An agreement whereby each of 56 subscribers covenants with the others, with a corporation, and with its manager, to sell at par or to take and pay at that rate for the amount of bonds of the corporation maturing 20 years later set opposite his name, in consideration of the covenants in such agreement of the corporation and its manager to sell and deliver to him or to others that amount of bonds at that rate and to pay him 5 per cent. commission in cash and 40 per cent. in full-paid unassessable stock of the corporation for selling or purchasing the subscribed bonds, is an "underwriting," a contract to insure the sale of the bonds at par, and, if they are not sold, to buy them at that price, and not a mere contract

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

to make a loan to the corporation. Neither the subsequent insolvency of the corporation nor the subsequent depreciation or worthlessness of the bonds and the stock constitutes any defense to an action against a subscriber for his breach of his agreement.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1837, 1839, 1841; Dec. Dig. § 472.*

For other definitions, see Words and Phrases, Second Series, Under-written.]

3. CONTRACTS (§ 303*)—INDEPENDENT COVENANTS—BREACH.

Where acts are stipulated to be done at specified times by one covenant of a contract, and acts are stipulated to be done without fixing any time for their performance by another covenant thereof, the latter covenant does not condition the former, is independent of it, and a breach of the latter constitutes no defense to an action for a breach of the former.

The same rule generally governs where acts are stipulated by one covenant to be done at different times from those fixed by another covenant for the performance of other acts.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1409–1443; Dec. Dig. § 303.*]

4. CORPORATIONS (§ 472*)—UNDERWRITING—ACTION FOR BREACH—DEFENSE—BREACH OF INDEPENDENT COVENANT.

The subscribers agreed to take and pay for the bonds at times specified in the underwriting, if not sold to others before that time. Just before the defendant signed the underwriting, the corporation, at the demand of the defendant and other St. Louis directors, agreed to build a plant at St. Louis costing about $1,000,000, and the defendant thereupon raised his subscription from $50,000 to $100,000. This agreement fixed no time for the erection of the plant, and was neither embodied nor referred to in the underwriting and the plant was never built.

*Held*, these facts constituted no defense to an action against the defendant for a breach of his contract to sell or take and pay for the bonds at the agreed times.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1837, 1839, 1841; Dec. Dig. § 472.*]

5. ASSIGNMENTS (§ 18*)—UNDERWRITING—ASSIGNABILITY.

An underwriting is assignable.

[Ed. Note.—For other cases, see Assignments, Cent. Dig. §§ 25–27; Dec. Dig. § 18.*]

6. CORPORATIONS (§ 472*)—BREACH OF UNDERWRITING—MEASURE OF DAMAGES.

The measure of damages for the breach by a subscriber of his contract of underwriting is the difference between the price at which he agreed to insure the sale or to purchase the securities and their value.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1837, 1839, 1841; Dec. Dig. § 472.*]

Carland, Circuit Judge, dissenting from conclusion reached.

In Error to the District Court of the United States for the Eastern District of Missouri; David P. Dyer, Judge.

Action by the Stromberg-Carlson Telephone Manufacturing Company against Adolphus Busch and others. Judgment against Adolphus Busch, and Lillie Busch and others, executors, etc., bring error. Reversed and remanded with directions to grant new trial.

Franklin Ferriss, of St. Louis, Mo. (Allen C. Orrick, of St. Louis, Mo., on the brief), for plaintiffs in error.

Irvin V. Barth, of St. Louis, Mo. (Warwick Hough and Warwick M. Hough, both of St. Louis, Mo., and Hubbell, Taylor, Goodwin & Moser, of Rochester, N. Y., on the brief), for defendant in error.

Before SANBORN and CARLAND, Circuit Judges, and REED, District Judge.

SANBORN, Circuit Judge. [1] The complaint of the plaintiffs in error is that a judgment was rendered against Adolphus Busch, the defendant below, for $27,636.67, because he failed to pay the last installment of $20,000 of his subscription of $100,000 to an underwriting contract for the bonds of the United States Independent Telephone Company, a corporation. A jury was waived, and at the request of both parties the court made a special finding of the facts in this case. Exceptions were taken to some of the findings, and to some failures to find as requested, but an examination of the record has convinced that there was substantial evidence to sustain the findings made, and that the evidence in support of the material findings requested and refused was not conclusive; so these exceptions are here dismissed. The decisions of a court in the trial of an action at law without a jury upon the weight of conflicting evidence are not reviewable in the national courts. Gibson v. Luther, 196 Fed. 203, 204, 116 C. C. A. 35, 36.

[2, 4] The defendant was one of the directors of the telephone company and the first of about 56 subscribers to sign the underwriting. This contract was made on November 23, 1895. By it Mr. Busch subscribed for $100,000 at par value of the bonds of the telephone company, which were secured by the pledge of personal property under a collateral trust agreement, and agreed to pay the amount of this subscription in five equal installments on February 1, 1906, May 1, 1906, August 1, 1906, November 1, 1906 and February 1, 1907, respectively. He paid the first four installments and took $80,000 of the bonds, which were dated October 2, 1905, and were to mature October 1, 1935, and $32,000 at par full-paid, nonassessable stock of the company; but when the last installment of his subscription fell due, the company, which had been prosperous and promising when he made his subscription, had become insolvent, and he declined to pay it.

The main contention of counsel for the plaintiffs in error is that the underwriting agreement is a mere executory contract to loan money to the telephone company, and not an agreement to insure the sale of or to purchase its bonds, and that there can be no lawful recovery for the breach of such a contract by a subscriber: (1) Because an action for specific performance will not lie; (2) because the breach causes no damage, for the agreement to repay the loan offsets the contract to make it; (3) because no recovery can be had for a refusal to advance money on overdue bonds; and (4) because the insolvency of the company and the worthlessness of the bonds releases from the previous obligation to loan it.

Conceding, without admitting that this might be the result if the underwriting were a mere contract to loan money, let us see if it was such an agreement. It is entitled "Underwriting Agreement." It recites that the telephone company has authorized the issue and the securing of the payment of its bonds, that it has sold or agreed to sell a part of them, that it desires to sell an additional $2,500,000 thereof to finance its future business "and to secure the underwriting of said $2,-500,000 bonds or such portion thereof as it shall not sell," and that the

manager has acquired $1,000,000 of the stock of the telephone company (which the record shows had been previously acquired and donated to him by stockholders), and that the company has requested him to act as its agent to sell the $2,500,000 bonds at par with 40 per cent. of the amount thereof in stock or voting trust certificates representing the same. It contains these covenants: "Each underwriter agrees * * * with the manager and every other underwriter that he will take up and pay for at par and accrued interest to the date of delivery" the amount of bonds set opposite his signature. The telephone company covenants that the manager, at any time before the $2,500,000 bonds are taken up and paid for by the underwriters, may sell them at par and accrued interest, and that if he so sells them to others than the underwriters they shall be deemed to have been taken up and paid for by the underwriters and shall be credited to them pro rata. The manager covenants that, as each underwriter takes up and pays for all of said bonds underwritten by him, for each $1,000 par value of bonds taken up and paid for or deemed to have been taken up and paid for and credited to such underwriter, he will deliver to such underwriter $400 par value full-paid and nonassessable stock of the telephone company or a voting trust certificate representing such stock, and that he will pay such underwriter a commission of 5 per cent. in cash upon the sale of each of said bonds when all of the bonds underwritten by such underwriter have been taken up or sold.

This contract is in terms and in legal effect far more than an agreement to loan money to the telephone company. It is an agreement by the subscribers to insure the sale of the bonds subscribed at par, and if they are not so sold to others then to purchase and pay for them at par, in consideration of the covenants of the telephone company and the manager to deliver the bonds and to pay the subscribers for selling or purchasing them 5 per cent. commission in cash and 40 per cent. in full-paid nonassessable stock of the telephone company. It is a contract to insure the sale of the bonds subscribed, and, in case they are not sold before the installments fall due, then to purchase and pay for them at par. It is an underwriting, and not an agreement to loan money. Moreover, it is an entire contract, complete in itself, and the covenants of the telephone company and the manager furnish a valuable and sufficient consideration for those of the subscribers. It is, therefore, no defense to an action against one of the subscribers for his breach of his contract that the telephone company became insolvent and the bonds worthless after he made his contract; much less is it a defense to a subscriber who, like Mr. Busch, has performed four-fifths of his undertaking and received four-fifths of its fruits. Peck Colorado Co. v. Stratton (C. C.) 95 Fed. 741; Otis v. Cullum, Receiver, 92 U. S. 447, 23 L. Ed. 496.

The subscribers might have provided in their agreement that they should be released from their undertaking in case the company became insolvent or the bonds became worthless or depreciated in value. They did not do so, and the reason is manifest. It is that the very purpose and object of the agreement was to insure the telephone company against that contingency, and by their contract the subscribers agreed that either by a sale to others or a purchase themselves they would in-

sure the company the receipt of the par value of the bonds for which they subscribed, however worthless they might become. They agreed to assume the risk of the depreciation of the bonds for the chance that their prospective value, the value of their commission of five per cent. in cash and 40 per cent. in stock of the telephone company, would more than remunerate them for their undertaking; and it is no defense that their expectations have not been realized or that their trade turned out a bad bargain. There was no error in the ruling of the District Court that the underwriting was not a mere agreement to lend money to the telephone company.

Just before Mr. Busch signed the agreement, he and other directors of the telephone company demanded from it, and its board of directors by a resolution agreed that the company would build a plant costing about $1,000,000 in the city of St. Louis, and thereupon Mr. Busch raised his subscription from $50,000 to $100,000, but the company never built the plant. It is specified as error that the court below held that these facts constituted no defense to this action: (1) Because the contract to build was not embodied in the underwriting and did not alter its terms; and (2) because, even if the agreement of the defendant to take and pay for the bonds and the agreement of the company to build the plant had been parts of an entire contract, they were not mutual and dependent covenants, but the covenant to build was independent of the covenant to take and pay for the bonds.

In support of this specification counsel contend that "the signature of Mr. Busch to the underwriting was conditional upon the erection of a plant at St. Louis." The record, however, fails to convince that Mr. Busch conditioned either his signature or his covenant to sell or purchase the bonds by the erection of such a plant. Mr. Busch might have made his signature or his performance of his covenant conditional on the erection of the plant by an appropriate provision in the underwriting, and if he intended to condition them it was his duty to express the condition in that contract. He inserted no such provision. Not only this, but the plant never was built, and at a meeting of the board of directors of the company on March 5, 1906, that board determined and resolved that the construction of this plant was necessarily to be deferred for the present. Notwithstanding all this, Mr. Busch paid four of his five installments, amounting to $80,000, and he paid two of them, amounting to $40,000, after the resolution of March 5, 1906, deferring the construction of the plant. It cannot be held, in the face of these facts, that Mr. Busch either conditioned or intended to condition his signature to the underwriting or his covenant to purchase the bonds with the construction of the plant at St. Louis. And conceding, without admitting, that the agreement of the company to build the plant and the agreement of the subscribers to sell or take and pay for the bonds were parts of an entire contract, the former covenant was independent of the latter, because it was not to be performed at the times when the latter was, and no time for its performance was stipulated or fixed, while the times of the performance of the latter were specified in the covenant itself.

[3] Where acts are stipulated to be done at specified times by one covenant of a contract, and acts are stipulated to be done without fix-

ing any time for their performance by another covenant thereof, the latter covenant does not condition the former, is independent of it, and a breach of the latter, while it may raise a cause of action, is no defense to an action for a breach of the former. The same rule generally governs where acts are stipulated by one covenant to be done at different times from those fixed by another covenant for the performance of other acts. In Loud v. Pomona Land & Water Co., 153 U. S. 564, 578, 14 Sup. Ct. 928, 932 (38 L. Ed. 822), the Supreme Court said:

"In the learned note of Serjeant Williams to the early case of Pordage v. Cole, 1 Saund. 320a, it is said that 'if a day be appointed for payment of money, or part of it, or for doing any other act, and the day is to happen, or may happen, before the thing which is the consideration of the money, or other act, is to be performed, an action may be brought for the money or for not doing such other act before performance; for it appears that the party relied upon his remedy, and did not intend to make performance a condition precedent; and so it is where no time is fixed for performance of that which is the consideration of the money or other act.'"

And this is still the law and the reason of such a case and of this case. Goldsborough v. Orr, 8 Wheat. 217, 223, 5 L. Ed. 600; American Emigrant Co. v. County of Adams, 100 U. S. 61, 71, 25 L. Ed. 563; Red Wing Hotel Co. v. Friedrich, 26 Minn. 112, 115, 1 N. W. 827; Clark on Contracts (1894) pages 655, 656. The court below rightly held that the contract of the telephone company to build the plant and its breach was no defense to the action against Mr. Busch for his breach of his agreement to take and pay for the bonds at the times he promised to do so.

[5] All the assignable rights of the telephone company in or under the underwriting have been duly transferred and conveyed to the plaintiff below, Stromberg-Carlson Telephone Manufacturing Company; but counsel argue that the contract was not assignable, because it recited that the telephone company desired "to sell an additional $2,500,-000 for the purpose of financing its future business and to secure the underwriting of said $2,500,000 bonds or such portions thereof as it shall not sell," and because it evidenced a personal trust and confidence of the subscribers in the telephone company to use itself the money to be paid for the bonds for the future business of the company and not to pay its old debts. The argument is not persuasive. It was as indispensable to the successful financing of the future business of the company that its just debts should be paid as that new purchases of property should be made, and the underwriting evidences no legal or moral restriction of the use of the money to be secured by the sale of the bonds to purposes other than the payment of the debts of the company or to any specific purpose. It is the customary underwriting contract, and the money realized from it was legally applicable to the payment of the debts or to any other lawful use of the corporation. The general rule is that contracts and choses in action are assignable, and this contract falls under no exception to that rule. Kirkpatrick v. Eastern Milling & Export Co. (C. C.) 135 Fed. 146, 149; Litchfield Savings Society v. Dibble, 80 Conn. 128, 67 Atl. 476, 477.

[6] Finally, counsel contend that the court erred, in that it allowed a recovery of the entire $20,000 which Mr. Busch agreed to pay as the last installment of the price of the bonds for which he subscribed, when

the recovery should have been limited to the difference between the amount he agreed to pay and the value of the bonds and stock he was to receive for the payment. The agreement on which this suit is founded is a contract to insure the sale of the subscribed bonds at par, and to buy at par the subscribed bonds not sold, and the true measure of damages for the breach of this agreement is the difference between the agreed price and the value at and after the breach of the bonds and stock which the defendant was to obtain therefor. Gordon v. Norris, 49 N. H. 376, 383; Collins v. Delaporte, 115 Mass. 159, 162; 2 Sedgwick on Damages (9th Ed.) § 753; Yellow Poplar Lumber Co. v. Chapman, 74 Fed. 444, 454, 456, 20 C. C. A. 503, 513, 515; Cherry Valley Iron Works v. Florence Iron River Co., 64 Fed. 569, 575, 12 C. C. A. 306, 312; Newark City Ice Co. v. Fisher, 76 Fed. 427, 22 C. C. A. 261; Salem Iron Co. v. Lake Superior Consol. Iron Mines, 112 Fed. 239, 245, 50 C. C. A. 213, 219; Denver Engineering Works Co. v. Elkins (C. C.) 179 Fed. 922, 927; South African Territories v. Wallingford, 1 App. Cas. (1898) 309, 1 Q. B. Div. (1897) 692, 695; Railroad Co. v. Seager, 7 Pa. Super. Ct. 268, 270, 271, 272; San Antonio Ry. Co. v. Busch (Tex. Civ. App. 1893) 21 S. W. 164; Id. (Tex. Civ. App.) 23 S. W. 308.

The recovery to which the plaintiff was entitled was, therefore, the difference between the $20,000 Mr. Busch agreed to pay and the value of the stock and bonds he was to receive for that payment, with interest on that difference. The court below did not find the value of the bonds and stock, nor the difference between that value and the agreed price, although there was evidence in the case tending to show that they had some value. The result is that the findings of the court fail to support the judgment, because they do not contain any finding of the value of the bonds at or after the breach of the contract, nor of the difference between that value and the agreed price of the bonds, and they convince that the damages for the breach were not measured by the true criterion.

For this reason, the judgment below must be reversed, and the case must be remanded to the court below, with directions to grant a new trial. It is so ordered.

CARLAND, Circuit Judge (dissenting as to result). The majority opinion declares:

"It is, therefore, no defense to an action against one of the subscribers for his breach of his contract that the telephone company became insolvent and the bonds worthless after he made his contract; much less is it a defense to a subscriber who, like Mr. Busch, has performed four-fifths of his undertaking and received four-fifths of its fruits. Peck Colorado Co. v. Stratton (C. C.) 95 Fed. 741; Otis v. Cullum, Receiver, 92 U. S. 447, 23 L. Ed. 496. The subscribers might have provided in their agreement that they should be released from their undertaking in case the company became insolvent or the bonds became worthless or depreciated in value. They did not do so, and the reason is manifest. It is that the very purpose and object of the agreement was to insure the telephone company against that contingency, and by their contract the subscribers agreed that either by a sale to others or a purchase themselves they would insure the company the receipt of the par value of the bonds for which they subscribed, however worthless they might become. They agreed to assume the risk of the depreciation of the

bonds for the chance that their prospective value, the value of their commission of 5 per cent. in cash and 40 per cent. in stock of the telephone company, would more than remunerate them for their undertaking; and it is no defense that their expectations have not been realized or that their trade turned out a bad bargain."

I concur fully in this clear and forcible statement of the law, and hence I fail to comprehend the opinion of the majority when as a result of the court's opinion it declares that the measure of damages is the difference between what Busch agreed to pay for the bonds and stock and what the actual value of the same may be shown to be at the trial. The only defense that plaintiffs in error made at the trial, upon the question of damages, was that the bonds and stock had become worthless by reason of the insolvency of the corporation which issued the same. The reasoning of the majority opinion in the language above quoted necessarily results in the affirmance of the judgment below, which I believe would be entirely correct, and for this reason I dissent from the conclusion reached in the opinion of the court.

If I buy bonds and stock at par to-day, I may not, in the absence of a special warranty or fraud, defend to-morrow on the ground that the stock has fallen to 50 cents.