[Civ. No. 5551. Second Appellate District, Division Two.—October 29, 1929.]

R. F. INGOLD, Appellant, v. DALY BANK & TRUST COMPANY OF ANACONDA (a Corporation) et al., Respondents.

Page, Nolan, Rohe & Freston for Appellant.

James Donovan for Respondents.

CRAIG, J.—On November 19, 1923, the respondent Daly Bank & Trust Company of Anaconda, Montana, transmitted to respondent Charles E. Sackett, at Los Angeles, California, its draft on the Wells Fargo Nevada National Bank of San Francisco, California, for $1,000. On November 23, 1923, the payee indorsed the same to respondent N. M. Hayter, who in turn indorsed it to R. F. Ingold, appellant herein, and, after deposit for collection by the latter, payment thereof was stopped. The appellant instituted this action against the respondents for the amount represented

by said draft, and, judgment having been rendered in favor of the defendants, he appealed.

Much is said in the briefs on the subject of alleged participation by Ingold in deception and fraud practiced upon Sackett concerning the value, or lack of it, of the stock in question, and other matters whose consideration is made unnecessary by the findings upon the issues vital to a determination of this appeal. The judgment cannot be upheld unless the findings of fact warrant it. We shall therefore quote all of the findings, which, of course, contain a story of the transaction in dispute as found by the trial court. They are as follows:

## "I.

"The plaintiff, R. F. Ingold, and N. M. Hayter were, prior to November 19th, 1923, directors of the Altruart Film Corporation. R. F. Ingold was also treasurer of said corporation from the time of its creation up to November 26, 1923. That N. M. Hayter was also fiscal agent of the Altruart Film Corporation up to November 26, 1923, and as such directors and officers of said corporation were familiar with the financial condition of said corporation.

## "II.

"Robert W. Major was president of said corporation from the creation thereof up to December ——, 1923.

## "III.

"That on or about the 1st of November, 1923, Robert W. Major, as president of the Altruart Film Corporation, and N. M. Hayter, as fiscal agent and director of said corporation, represented to the defendant Charles E. Sackett that the Altruart Film Corporation was in a good financial condition and that some directors of said corporation desired that said Charles E. Sackett should purchase an interest in said corporation and become a director of the same; and that by the 1st of January, 1924, the company would be manufacturing and selling moving pictures. It was further represented to said Sackett that N. M. Hayter was in charge of the sales of the stock of said corporation under a certain permit issued by the commissioner of corporations, and that he had a number of sales agents and that the sales were going very well. That stock had been

issued to eleven (11) persons who became incorporators and promoters of said corporation and that each of said incorporators had paid in to said corporation one thousand dollars ($1,000.00) each for stock which was to be issued to each of said incorporators. That among the original incorporators was one John D. Elms, who had invested in said corporation the · sum of one thousand dollars ($1,000.00), and that said Elms was about to retire from said corporation and that N. M. Hayter had purchased the interest of said Elms in said corporation and would sell to the defendant Sackett for the sum of one thousand dollars ($1,000.00).

"IV.

"That relying upon the statements so made by said Major and Hayter, and each of them, to the defendant Sackett, Sackett purchased what was known as the Elms stock from N. M. Hayter and gave therefor a certain draft for one thousand dollars ($1,000.00) issued by the Daly Bank & Trust Company of Anaconda, Montana, drawn on Wells Fargo Nevada National Bank of San Francisco, payable to Charles E. Sackett, or order, and endorsed by said Sackett to Hayter.

"V.

"That immediately after the purchase of said Elms stock by Charles E. Sackett from N. M. Hayter, and after delivering said draft to said Hayter, Robert W. Major, president of said corporation, informed said Sackett that the representations so made by Major and Hayter to said Sackett were false and untrue, and said Major advised said Sackett that the corporation had no assets, that it was in debt and had no funds with which to pay its debts, and advised said Sackett to stop the payment of said draft.

"VI.

"Upon the advice so furnished to said Sackett by said Major, Sackett ordered the Daly Bank & Trust Company to notify the Wells Fargo Nevada National Bank of San Francisco to refuse payment of said draft, and upon such notice Wells Fargo Nevada National Bank of San Francisco refused to pay said draft.

## "VII.

"That on the same day that said draft was received by N. M. Hayter from Sackett for the Elms stock it was delivered to the plaintiff, R. F. Ingold, who was then and had been since the creation of Altruart Film Corporation treasurer of said corporation and one of its directors and knew at the time he received said draft from said Hayter that said draft was given by Sackett to Hayter for the Elms stock.

## "VIII.

"That in the purchase of said Elms stock by N. M. Hayter from John D. Elms, Hayter gave his promissory note therefor, which note was endorsed by the plaintiff, R. F. Ingold.

## "IX.

"That R. F. Ingold knew at the time that Sackett purchased the Elms stock from Hayter that the stock was of no value and of only prospective value, and also knew that the physical properties of the corporation were worthless, and that said corporation had no assets of any real value whatever at the time Sackett purchased the Elms stock from N. M. Hayter.

## "X.

"That the plaintiff, R. F. Ingold knew that the draft received from Sackett was given by Sackett to said Hayter in consideration of the transfer of the Elms stock from Hayter to Sackett.

## "XI.

"That plaintiff knew and was charged with knowledge of the fact that consideration given for said draft by Hayter was worthless and that Sackett received no consideration for said draft transferred by Sackett to Hayter.

## "XII.

"That the plaintiff, Ingold, received said draft from Hayter well knowing that the Elms stock which was transferred by Hayter to Sackett was worthless and that Sackett received no consideration of value for the transfer of said draft.

## "XIII.

"That the plaintiff was not a *bona fide* purchaser of said draft from Sackett under section 3133 of the Civil Code.

## "XIV.

"That at the time when the stock of John D. Elms was purchased by Charles E. Sackett from N. M. Hayter the plaintiff herein was of the opinion and belief that with proper management said corporation might prove to be a profitable organization.

## "XV.

"That the plaintiff and Sackett had never met prior to the sale by Hayter of the Elms stock to Sackett, and the plaintiff and Sackett did not meet until October, 1925, almost two years after the transaction which is the subject of this litigation. That the plaintiff did not at any time, or at all, directly or indirectly, make any representation whatsoever, of any kind or character, to Sackett, and said Sackett was not induced to enter into the purchase of Elms' stock because of any actions, conduct, statement or representation of the plaintiff.

## "XVI.

"That Robert W. Major was a creditor of the Altruart Company and demanded of Hayter that he be paid a portion of the money which was paid to Hayter by Sackett in purchase of the Elms stock, and that Hayter refused this demand, and it was then, and only then, that Major represented to Sackett that the Altruart Company was not in good financial condition and that he might lose his money unless he stopped payment on the draft.

## "XVII.

"That the plaintiff was a stranger to the transaction between Sackett and Hayter whereby Sackett purchased the Elms stock, and was not charged with any fraud or knowledge of any fraud, if such there was, as between Hayter and Sackett or between Major and Sackett, and that the plaintiff herein paid Hayter the full sum of $1,000.00 for said draft."

It thus appears from the findings of the trial court that although the appellant was an officer of the corporation,

and was fully advised of its doubtful financial condition, and knew that the Elms stock was then worthless, and that the respondent Sackett gave a draft for $1,000 therefor, he was not a party to any wrongdoing. It was found, in effect, that he knew that the Elms stock acquired by Hayter and by him sold to Sackett was of prospective value, and that he was of the opinion and belief that with proper management the corporation might prove to be a profitable organization. Ingold paid Hayter the full sum of $1,000 for said draft, and had therefore indorsed the note which Hayter had given for the stock which the latter sold. Appellant "did not at any time, or at all, directly or indirectly, make any representation whatsover of any kind or character to Sackett, and said Sackett was not induced to enter into the purchase of Elms' stock because of any actions, conduct, statement or representations of the plaintiff." He "was a stranger to the transaction between Sackett and Hayter whereby Sackett purchased the Elms stock, and was not charged with any fraud or knowledge of any fraud."

The foregoing was equivalent to finding that Ingold was a purchaser and holder of the draft in good faith and for value. Section 3133 of the Civil Code reads as follows:

"A holder in due course is a holder who has taken the instrument under the following conditions:

"(1) That it is complete and regular on its face;

"(2) That he became the holder of it before it was overdue, and without notice that it had been previously dishonored, if such was the fact;

"(3) That he took it in good faith and for value;

"(4) That at the time it was negotiated to him he had no notice of any infirmity in the instrument or defect in the title of the person negotiating it."

Notwithstanding an attempted finding, numbered XIII, which is but a conclusion, the most that can be said of these findings is that appellant knew of the precarious condition of the corporation at the time and that the stock then had no value. They do not pretend to find that the draft was irregular, that it was received by Ingold before it was overdue, that it had been previously dishonored, was received without good faith or value, paid by Ingold, or that he had notice of any infirmity in the

draft or defect in Hayter's title to it. ██ A lack of consideration for a draft, unaccompanied by any other element, such as fraud, would not constitute an infirmity in the instrument or a defect in the title of the person negotiating it. (*Faris* v. *Beck*, 74 Colo. 480 [222 Pac. 652]; *Otis* v. *Cullum*, 92 U. S. 447 [23 L. Ed. 496, see, also, Rose's U. S. Notes].)

██ In their briefs respondents repeatedly assert that they alleged fraudulent representations and bad faith on the part of Ingold. They did, but the court's findings are directly opposed to these allegations, and so, such assertions are of no consequence upon this appeal. Sackett gave the draft in question for the Elms stock. He received that stock. Undoubtedly he might sue the parties *ex delicto* who made the false statements to him, but as against Ingold, who is found to have had no connection with such fraud as was practiced, we hold that it is no defense that the stock which Sackett received was of no present or immediate value.

The judgment is reversed.

Works, P. J., and Thompson (Ira F.), J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on November 27, 1929, and a petition by respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 26, 1929.

All the Justices present concurred.