*573 OPINION.
Beech:
The ultimate question presented is whether petitioner’s acquisition of 18,730 shares of the common stock of Grigsby-Grunow Co. in 1929 was a transaction upon which loss was then realized and recognized for income tax purposes. If it was, petitioner’s asserted loss was sustained in that year. If that transaction was not closed by petitioner’s receipt of those shares of stock, but continued open until his admitted sale of them in a later year, then petitioner sustained no loss by reason of their mere receipt during 1929, the year here in dispute.
Petitioner argues the transaction was a mere loan of credit, or a contract of insurance or indemnity — completely executed and closed, as to petitioner, by his acquisition of the stock. He contends the stock so acquired was analogous to salvage received by an insurer from an insured upon performance of an insurance contract — the gain or loss on the disposition of which salvage must await its disposition — but that the insurance transaction, separate from that involving the disposition of the salvage, is completely closed by payment under the insurance contract and the acquisition of the salvage, and, that, upon his acquisition of the 18,730 shares of Grigsby-Grunow stock, petitioner here sustained a loss — -in the amount of *574 the difference between tbe amount be paid the Grigsby-Grunow Co. upon acquisition of that stock and its fair market value when thus received in the tax year.
Respondent’s position is that the disputed transaction was merely a purchase of the stock by petitioner, and that petitioner’s loss is not deductible until the later years when, and not before, for income tax purposes, the transaction was closed by the admitted sale of the stock.
The intent of the parties to the present “ underwriting agreement ” is decisive of its legal effect. The best evidence of that intent, of course, is the agreement itself, construed as a whole Heryford v. Davis, 102 U. S. 235; William S. Gordon, Trustee, 33 B. T. A. 460; and by what the contracting parties did thereunder, First National Bank in Wichita v. Commissioner, 57 Fed. (2d) 7, affirming 19 B. T. A. 744; certiorari denied, 287 U. S. 636.
Though not in itself determinative (A. B. Watson, 24 B. T. A. 466), it is important to note that the written records of the Grigsby-Grunow Co., covering the transaction, as well as the underwriting contract to which petitioner became a party, and the notice of John Burnham & Co., syndicate managers and participants, calling for petitioner’s performance under the contract, clearly denominated it under an underwriting agreement of purchase or sale. International Products Co. v. Vail’s Estate, 123 Atl. 194 (Vt.). In one instance only, which appears in the resolution of the Grigsby-Grunow directors authorizing the contract, was it referred to as anything else, and then as “ for the purpose of insuring the sale.”
Clearly the contract was not a mere loan of credit. Busch v. Stromberg-Carlson Telephone Mfg. Co., 217 Fed. 328; certiorari denied, 239 U. S. 644; In re Danville Hotel Co., 38 Fed. (2d) 10.
The primary purpose of the present underwriting contract was the sale of the new Grigsby-Grunow common stock. Such a contract is fundamentally different from underwriting as used in insurance, and is so treated by the courts. Fraser v. Home Telephone & Telegraph Co., 157 Pac. 692 (Wash.); International Products Co. v. Vail’s Estate, supra. It is true, the definitions there given of underwriting agreements, substantially similar to that here, include the terms “ guaranty ” and “ sale.” Fraser v. Home Telephone & Telegraph Co., supra; International Products Co. v. Vail’s Estate, supra. But, that “ guaranty ” means, apparently, only the assurance or guarantee of performance a seller and buyer receive upon the execution of an absolute contract of purchase and sale. If the agreement between the syndicate and Grigsby-Grunow Co. had been unconditional, its character as a simple purchase and sale contract would be undoubted. The interposition of the right to bring about a sale of the stock to others does not change that identity. Nor *575 did the provision which entitled the syndicate members to $4 per share on the stock underwritten. Busch v. Stromberg-Carlson Telephone Mfg. Co., supra. True, it was, in its inception, contingent upon failure in the sale of the stock to others during the contract period. But it became absolute, as obviously contemplated by the parties, when that contingency occurred. And, upon that occurrence, in accordance with the expressed and unambiguous provisions of the underwriting contract, the disputed stock was, in fact, purchased by petitioner. That the purchase price was. in excess of the then market does not change that fact. Hugh M. Matheson, 31 B. T. A. 493. As intended and executed, we conclude the transaction in 1929 was simply a purchase and sale. In re Hackett, Hoff & Thierman, Inc., 70 Fed. (2d) 815; Minot v. Burroughs, 112 N. E. 620 (Mass.); International Products Co. v. Vail's Estate, supra; Fraser v. Home Telephone & Telegraph Co., supra; Busch v. Stromberg-Carlson Telephone Mfg. Co., supra. As the Circuit Court of Appeals for the Seventh Circuit in In re Danville Hotel Co., supra, stated:
All the parties hereto agree that this agreement is an underwriting contract, and that by its terms Caldwell & Co. agreed, for a valuable and sufficient consideration, to sell the bond issue of the hotel company or to purchase it in case it failed to sell the issue. It has been decided, without exception, we think, that such an instrument is not an agreement to loan money, but it is a guaranty either to sell or to buy the bonds, and the underwriter is in fact considered the ultimate purchaser of the bonds. [Emphasis supplied.]
Another inquiry, possibly implicit here, is whether this sale constituted a distribution of rights to purchase the stock, to petitioner, from an underwriting syndicate, upon which no loss was sustained until the later years when the stock, acquired in the exercise of these rights, was sold. Cf. Bradley W. Palmer, 32 B. T. A. 550.
The disposition of this question depends upon “ whether participants and managers are one, and this determination in turn [depends] upon the measure of control which the former have relinquished to the latter. * * * Where the managers are no more than mere agents, the participants stand in the relation of partners or joint venturers, at all times able to deal as they please with their own property. A distribution by managers to subscribers in such circumstances passes nothing to the latter, therefore, which they did not have before. J. Henry Dick Estate, 20 B. T. A. 637. But where the measure of control given the managers is unfettered, so that their investment, sale, reinvestment and general disposal of the subscribers’ stock or cash temporarily entrusted to them is beyond the power of the subscribers to forbid or to regulate, the managers in the person of the syndicate assume a corporate will and entity independent of the contributors.” Wm. S. Gordon, supra. Cf. Oliver W. Birckhead, 33 B. T. A. 466.
*576 The pending agreement is rather brief. It provides:
As Managers, we shall have full control and discretion in all syndicate affairs, and to do all things which in our unrestricted judgment are for the best interest of the syndicate, including the right to trade in shares of the Company or subscription warrants to be issued in connection with the proposed issue, provided, however, that the total commitment in such trading, either for long or short account, shall at no time exceed 15% of the maximum syndicate obligations.
But it then stipulates:
This agreement is made for the benefit of Grigsby-Grunow Company as well as for the benefit of yourselves and ourselves, and shall be enfordble by Grigsby-Grunow Company. [Emphasis supplied.]
This underscored provision seems to indicate clearly that petitioner held himself out to and here contracted with the Grigsby-Grunow Co. as a principal for whom John Burnham & Co., syndicate managers, as well as a participant, was acting only as an agent. Cf. J. Henry Dick Estate, supra.
In any event, it was petitioner’s burden to establish the fact that the underwriting syndicate was intended and treated as a separate entity. Glenmore Securities Corporation v. Commissioner, 62 Fed. (2d) 780; certiorari denied, 289 U. S. 754.
Petitioner does not sustain that burden on this record.
Thus, petitioner received nothing from the syndicate that he did not have before, as a principal. J. Henry Dick Estate, supra. The stock was, in fact, purchased from the Grigsby-Grunow Co. by petitioner.
Thus, since the disputed transaction was a mere sale of the stock to petitioner, no deductible loss was sustained on its acquisition — that must be deferred until its later admitted sale.
Reviewed by the Board.

Decision will be entered for resfondent.