Story, Justice,
 

 delivered the opinion of the court. — This is a case originating under the attachment act of Maryland of 1795 (ch. 56), and brought to this court upon a writ of error to the circuit court of the district of Columbia, for Washington county. The suit was brought by Orr, the defendant in error, on what is technically called a short note, expressing the true cause of action, as follows :
 

 Howes Goldsborough, Esq.
 

 To Benjamin G. Orr, Dr.
 

 May 5, 1818. To the west house of four, on P street, south, between 4⅜ street, west, and Water street, with the four lots adjoining to the west . . . . 4500 00
 

 To the house on P street, south, adjoining the above house on the east side, and lot No. 21, on O street, south, 4500 00
 

 February 15, 1819. To lots Nos. 9 and 10, and part of 11, containing-square feet, 12⅜ cents per foot, . 1906 00
 

 $10906 00
 

 By amount of your account up to 17th of April 1819, . 7896 11
 

 $2919 89
 

 Errors excepted, 4th of June 1819.
 

 BekjamiN G. Ore.
 

 
 *96
 
 *The original defendant, Goldborough, appeared and dissolved the attachment, by putting in special bail, and pleaded
 
 non assumpsit,
 
 upon which issue was joined, and a verdict found for the plaintiff for the above balance of $2919.89, with interest. A bill of exceptions was taken at the trial, in substance as follows:
 

 The plaintiff in this case, to support the issue joined, on his part offered in evidence the account marked A, which is as follows, to wit:
 

 Howes Goldsborough, Esq.
 

 Bo’t of Benjamin G. Orr,
 

 May 5, 1818. The west house of four houses on P street, south, between 4⅛ street, west, and Water street, with four lots adjoining to the west, . 4500 00 Or.
 

 By his note, payable to A. J. Comstock, on the 1st of February 1819, ...... 1190 24
 

 By do., payable to A. J. Comstock, on the 1st of August 1819, ....... 1238 09
 

 $2428 33
 

 To balance due Benjamin G. Orr, payable in lumber, at usual lumber-yard prices, of which some part has already been delivered to his orders, . . . . $2071 6
 

 Benjamin G. Obe,
 

 H. Goldsboeough,
 

 Washington, May 5, 1818.
 

 *The agreement marked B, which is as follows, to wit :
 

 It is agreed between Benjamin G. Orr, of the city of Washington and Howes Goldsborough, of the state of Maryland, as follows, to wit : The said Orr sells to said Goldborough the three-story brick house adjoining the one now in the possession of Commodore Rodgers, on P street, south, with the coach-house and stable adjoining, and the lot on which they stand, being numbered three, and a lot numbered twenty-one, on O street, south, for $4500. The said Orr also sells to said Goldsborough, lots Nos. 9 and 10 and part of 11, in the same square, with the water-privilege thereto belonging for twelve and a half cents for each square foot which they contain, all of which sales are to be paid for in lumber, in the city of Washington, at the usual lumber-yard prices ; one-half thereof to be deliverable the present year, the other half in the year 1819, as it may be wanted by the said Orr. The said Orr further agrees to take of the said Goldsborough as much more lumber, which added to the amount of the above property, when calculated in money, as will make the whole amount to $10,000. And for such further amount, to give his note, payable on the 15th day of February, in the year 1819, to the said Goldsborough. The titles to be made on demand, and the delivery of the lumber to be guarantied by Commodore Rodgers.
 

 Washington, May 5th, 1818.
 

 BeNjamiN G. Obe,
 

 H. Goldsboeough.
 

 
 *97
 
 *1 do hereby guaranty, that H. Goldsborough shall deliver the lumber mentioned in the within contract, on condition that B. G. Orr, on his part, complies with the stipulation on his part, also mentioned in this said instrument of writing.
 

 JOHN Rodgers.
 

 And the receipt marked 0, which is as follows, to wit:
 

 Received of Benjamin G. Orr, his note, payable on the 15th day of February 1819, for the sum of $3594, in compliance with his agreement, dated the 5th day of May 1818.
 

 H. Goldsborough.
 

 And further proved by a witness, that late in the winter, or in the spring of 1819, the defendant refused to deliver any more lumber to the orders of the plaintiff; the balance of lumber due under said contracts being duly demanded of the defendant, by agent of the plaintiff; and it was admitted, that the said houses and lots mentioned in said contracts, had been duly conveyed according to agreement. And the defendant thereupon proved, that he delivered lumber to the orders of the plaintiff to the amount of $7986.11, according to a particular account thereof, which was produced, which includes the same amount of $2428.33, mentioned in the first account A, the notes therein mentioned being payable in lumber, and the lumber given %in discharge of the same, being charged in the general account B ; and that he delivered lumber to the plaintiff’s order, whenever called for, until the 15th of February 1819, when the note filed in the cause, and mentioned in this defendant’s receipt, fell due ; that then, the said note not being paid by plaintiff, the defendant refused to deliver any more lumber, and the plaintiff requested said defendant to give him further time, until some day in the April following, to pay the said note (at which time he promised to take it up), and to continue the delivery of lumber to his orders, as he might want it, until that day ; and the witness, who was the defendant’s agent, would have gone on to deliver the whole quantity, if it had been called for, before the time limited as aforesaid for the payment of the note, in April, not having been restricted by defendant’s orders as to quantity; and that on the said day of April, the plaintiff again made default in paying the said note, and the defendant then refusing to deliver any more lumber, this suit was brought. If they believe the facts above stated to be true, the plaintiff is not entitled to recover in the suit. Which direction the court refused to give. To which refusal, the defendant, by his counsel, excepts, &c.
 

 And the parties have since annexed to the record, as a part thereof, the following explanatory statement:
 

 Whole amount of the purchase-money of the house and lots sold by the agreement, B, viz :
 

 *House, with coach-house, &c., and lot 21, . . $4500
 

 Lots 9,10, and part of 11, at 12£ cents per square foot, 1906
 

 - $6406 00
 

 Do. for the other house and lots sold as
 
 per
 
 account A, , 4500 00
 

 Total amount for both houses, and all the lots under both contracts. 10,906 00
 

 
 *98
 
 Of this amount, Goldsborough had delivered lumber on account of Orr, to the amount stated in the account D (including all the credits stated in the account A) $Í986 11
 

 Leaving a balance to be delivered on account of the houses and lots sold and conveyed by Orr to Goldsborough, for which judgment is now recovered, with interest 2919 89
 

 10,906 00
 

 In order to complete the contract B, so as to make ^he w^°^e amount in ^lumber to be taken by Orr under that contract .... $10,000
 

 He gave the note mentioned, for . . . ■. . . $3594 00
 

 To which, adding the purchase-money for the house and lots sold by that contract. 6406 00
 

 Makes the total amount to be taken in lumber under that contract.$10,000 00
 

 Upon the argument of the cause in this court, the principal question has been, whether the failure of Orr to pay the note of $3594, constitutes a good defence to this suit. That there is a balance due to Orr of $2919.89, for property actually conveyed by him to Goldborough, under the agreements stated in the case, is most manifest; and the only point open for consideration is, whether the payment of the note is a condition precedent to the recovery of that balance. This must be decided by the terms of the written agreement B ; for if the contract on one side be not dependent upon the performance of the contract on the other, or if they be not mutual and concurrent contracts, to be performed at the same time, there can be no doubt, that the defence is unsupported. And, upon full consideration, we are all of opinion, that the contracts are not dependent or concurrent, by the true and necessary interpretation of that agreement.
 

 The agreement on the part of Orr was *literally complied with. The titles to the property sold were duly made, the note was duly given, and Orr was at all times ready to receive the lumber, according to his rights under the agreement. It is observable, that one moiety of the lumber was deliverable in 1818 ; and as to this, it is clear, that the payment of the note could not be a condition precedent. The other moiety was deliverable in the year 1819, as it was wanted by Orr, and, of course, he might elect to demand the whole before, as well as after the note became due, at his pleasure. If this be so, it could not be within the contemplation of the parties, that the delivery of the lumber should be dependent upon the payment of the note, for the whole might be rightfully demanded, before it became due. Nothing is better settled, both upon reason and authority, than the principle, that where the acts stipulated to be done, are to be done at different times, the stipulations are to be construed as independent of each other. The parol enlargement of the time of payment of the note, cannot be admitted to change the nature of the original agreement; nor is there any pretence so say, that there was any waiver of the original agreement, even supposing that, in point of law, such a waiver could be insisted upon,
 
 *99
 
 in a ease circumstanced like the present. For the parties recognised the existence of that agreement, and lumber continued to be delivered under it, as Orr required. If, indeed, any waiver were to be implied, it would be a waiver by Goldsborough of a payment of the note, as a condition precedent to the delivery of *the lumber. But the parol contract does not, in any degree, vary the legal rights or obligations of the parties. The court below was, therefore, right in refusing the instruction prayed for by the counsel for the defendant.
 

 After the argument, some difficulties occurred as to the nature and form of the proceedings under this attachment act; but upon hearing the parties again, our doubts are entirely removed. One of the doubts was, whether, in cases of attachment, if the defendant appeared and dissolved the attachment, there ought not to be a declaration and subsequent pleadings, according to the course in ordinary actions. Upon the terms of the acts respecting attachments, we should have inclined to the opinion, that such a declaration, and such pleadings, were necessary. But the practice is shown to have been otherwise, and that practice has been solemnly adjudged by the court of appeals of Maryland to be in conformity to law.
 
 (a)
 
 We have no disposition to disturb this construction.
 

 Another doubt was, whether an attachment will lie, in a case
 
 ex contract'd,,
 
 for unliquidated damages for non-delivery of goods. The act of 1795 gives the remedy, upon ihe creditor’s making oath, &c., that the debtor is
 
 bond fide
 
 indebted to him in a sum certain, over all discounts, “ and at the same time producing the bond or bonds, bill or bills, protested bill or bills of exchange, promissory *note or notes, or other instrument or instruments in writing, account or accounts, by which the debtor is so indebted.” This enumeration would seem to include such cases only of contract as were for payment of money, either certain in themselves, or for which debt, or
 
 indebitatus assumpsit,
 
 or actions of that nature, would lie. It does not seem to include a contract for the delivery of goods, or doing any other collateral act.
 
 (b)
 
 But however this may be, and we give no opinion respecting it, we are satisfied, that upon the contract in the present case, the plaintiff is entitled to a specific sum in money, so as to bring himself within the purview of the act. The value of the property sold was estimated in money ; and though it was payable in lumber, yet if, upon demand, the defendant refused to deliver the lumber, he lost the benefit of that part of the contract, and the plaintiff became entitled to receive the sum stipulated to be paid in money.
 

 Some objections were taken by the defendant to the preliminary proceedings in this suit ; but it is unnecessary to consider them, because, whatever might have been their original defects, they are waived by going to trial upon the merits. The judgment of the circuit court is, therefore, affirmed, with costs,
 
 (c)
 

 Judgment affirmed.
 

 (a)
 

 Samuel Smith and others v. Robert Gilmor and others, Garnishees of Wilhelm and Jan Willink, 4 Har. & Johns. 177.
 

 (b)
 

 See, under the act of 1715, ch. 40, State
 
 v.
 
 Beall, 3 Har.
 
 &
 
 McHen. 347.
 

 (c)
 

 The editor having been favoured with a MS. note of the case of Smith v. Gilmor, cited by the court in the preceding case, determined in the court of appeals of
 
 *100
 
 Maryland (since reported in 4 Har. & Johns. 177), takes the liberty of adding it, for the information of the learned reader.
 

 *Samuel Smith and others v. Robert Gilmor and others, Garnishees of Wilhelm and Jan Willink.
 

 Appeal from Baltimore County Court. In this case, an attachment issued, on the Sd of February 1805, in the names of the present appellants, against the lands, tenements, goods, chattels and credits of Wilhelm and Jan Willink, under and in virtue of » warrant from a justice of the peace of Baltimore county, directed to the clerk of the county court .of that county, accompanied by an affidavit and account, pursuant to the directions of the act of assembly of 1795, ch. 56. At the same time, the plaintiffs prosecuted a writ of
 
 capias ad respondendum
 
 against the defendants, and filed a short note, stating that the suit was brought to recover the sum of $14,094.84, due from the defendants to the plaintiffs, on account, and a copy thereof was sent with the said writ indorsed, “ to be set up at the court-house door by the sheriff.” The attachment was returned by the sheriff, laid in the hands of Robert Gilmor and others (the appellees), and the writ of
 
 capias ad respondendum
 
 was returned
 
 tarde.
 
 The garnishees being called, appeared, and by their counsel pleaded, that Wilhelm and Jan Willink did not aissume, &c., and that at the time of laying the attachment, &c., they had no goods, &c., of the said Willinks in their hands. The general replication was put in to the last plea, and issues were joined. Verdict for the plaintiffs for $12,775, current money, damages. Motion by the garnishees in arrest of judgment, and the reason assigned was, because no declaration had been filed in the case. The county court sustained the motion, and arrested the judgment. The plaintiffs appealed to this court.
 

 The case was argued in this court by
 
 Winder,
 
 for the appellants, and by
 
 Martin
 
 and
 
 Harper,
 
 for the appellees.
 

 The court of appeals reversed the judgment of the county court, and rendered judgment of condemnation on the verdicts, for the plaintiffs, for $12,775, current money, damages, together with $1975.93, current money, additional damages and costs.