Mr. Justice MacArthur
stated the case and delivered the opinion of the court:
The bill in this case was filed in equity to set aside conveyances of real estate and transfers of other property alleged to have been made in fraud of creditors. The bill charges that on the 29th day of November, 1872, John Lane, one of the defendants, was entitled to and possessed the equity of redemption in parts of lots 128, 129, in Beatty and Hawkin’s addition to the city of Georgetown, and also owned and possessed all the goods, furniture,, and personal *279 effects in the dwelling-house upon said premises; and being such owner at the date above mentioned, he conveyed the same to Robert EL Ward, and the said Ward conveyed the same back to the defendant, Elizabeth E. Lane, wife of said John Lane, for the nominal consideration of $10,000, but that in fact said conveyances were without anything being paid by the grantees in either case.
The bill also charges that the said Lane theretofore owned the sum of $2,500, which he loaned to Jacob Ramsburg & Sons, taking their two notes therefor indorsed by one John E. Cox, and transferred the same to his said wife, and that the same is now in her custody and control. Other transfers of accounts are also set forth, but we do not deem it necessary to consider them in disposing of the case.
The bill seeks to set aside the conveyances of real estate as in fraud of creditors, and to subject the aforesaid notes to the payment of the debts of said Lane, on a charge that he has transferred them to his wife for the same fraudulent purpose.
On the 19th of March, 1873, the creditors of said John Lane filed a petition to have him declared a bankrupt, and on the 27th of the same month he was adjudged a bankrupt, and on the 15th of April following the complainants in this cause were appointed his assignees.
The court at special term decreed that the deeds from Lane to Ward, and from the latter to Mrs. Lane, were fraudulent and void as to Lane’s creditors, and authorized the complainants to receive the two notes of Jacob Ramsburg & Sons, and to collect the same for the benefit of the proper creditors of the bankrupt.
The cause is now before us on an appeal from this decree#
In order to determine whether the deeds of the lots in Georgetown are fraudulent, a reference to the circumstances under which they were executed becomes necessary. The facts bearing upon this point are few and decisive. It is admitted that the property was conveyed to Mrs. Lane as a voluntary settlement; that she has paid nothing, and does not expect to pay any consideration therefor; that she had no property at the time of her marriage and has acquired none since except by gift from her husband. The amended *280 schedules of the debts and property of John Lane in the bankrupt proceedings are made exhibits in this case, and from them it appears that his unsecured liabilities exceeded $3,500, and that about $1,200 of this indebtedness was incurred previous to the execution of the deeds in question. It also appears from the testimony of Lane himself that he owned no other property at this time except his stock in trade, worth, according to his own estimate, $2,400; but when he filed his schedules, within four months afterward, this had been reduced to $100, which he claimed as an exemption. We think these circumstances clearly show that the conveyances were in derogation of the rights of Lane’s creditors, and that the decree below properly declared them void as against such creditors for that reason.
Both Lane and his wife claim in their answers aud testimony that these deeds were made in good faith and without any fraudulent intention, but we must believe that parties intend the inevitable consequence of their acts. When the grantor in a deed, without receiving any real consideration for it, conveys the bulk of his property out of the reach of his creditors, there is a presumption of law and fact both that he intends to defraud them ,• and the mere declaration of the parties to such a transaction that they acted in good faith will not be sufficient to repel the unfavorable inference.
Another question arising in the case is whether creditors whose debts were created subsequently to the date of the conveyance are entitled to share in the proceeds. The statute of 13th Elizabeth, which is the law of this District, declares all conveyances void which are made with intent to defraud creditors ; but only embraces such creditors as the grantor is indebted to at the time of the conveyance. The decisions are very numerous which hold that mere voluntary settlements are within the statute, and therefore void as to existing creditors. The Supreme Court has given its unqualified assent to this doctrine in Sexton vs. Wheaton, 8 Wheaton, 227, and the distinction between existing and subsequent creditors is clearly made; and it is held that as respects the latter the conveyance is not void unless there is intentional fraud contemplated by the grantor in the creation of future debts. This decision was made in the case of a subsequent *281 creditor seeking to have a voluntary conveyance in favor of a wife declared void; but that court has never had occasion to pass upon the question, where the conveyance is set aside at the suit of antecedent creditors, whether creditors whose debts have been contracted since its execution may not come in upon the fund thus created. The proposition has been considerably discussed, and different views have been expressed; but I can find no adjudged case against it, and there are several in its favor.
Mr. Chancellor Kent, in his celebrated judgment pronounced in Reade vs. Livingston, 3 Johns. Ch. R., 497, remarks: “The cases seem to agree that the subsequent creditors are let in only in particular cases, as where the settlement was made in contemplation of future debts; or where it is requisite to interfere and, set aside the settlement in favor of the prior creditors.”
In Ede vs. Knowles, 2 Younge & Coll., B. R., 172, 178, cited, in the notes to Story Eq. Jur., sec. 361, Mr. Vice-Chancellor Bruce says: “The plaintiff does not allege by his bill that he was a creditor at the time of the settlement. I apprehend that a deed can only be set aside as fraudulent against creditors at the instance of a person who was a creditor at the time, though when it shall have been set aside subsequent-creditors may be let in.”
The only view expressed by Story himself, I find in the note preceding the one just cited, in which he says: “ Where the settlement is set aside as an intentional fraud upon creditors, there is strong reason for holding it so as to subsequent creditors, and to let them into the full benefit of the property,” citing several authorities.
It would be impossible to consider the circumstauces surrounding the execution of the deeds under consideration without coming to the conclusion that they were intentionally fraudulent, at least as respects existing creditors; and the case therefore falls within the above reasoning.
I also refer to 1 American Leading Cases, 1, where the learning on the subject of voluntary conveyances is elaborately developed in the notes to Sexton vs. Wheaton. At page 56 is the following language in reference to this point:
“In equity, if a conveyance is set aside by the prior credit *282 ors as being voluntary and fraudulent as against them, the whole settled estate becomes assets, and the subsequent creditors are entitled to come in upon the proceeds; ” and he cites a list of six cases from as many different courts for the principle. Indeed, if there is a decided case the other way it has escaped my examination, and we are inclined to acquiesce in what seems to be supported by the weight of authority. In conformity with this view we hold that the property goes into the estate of the bankrupt for the benefit of the creditors generally.
We have expressed an opinion on this point because it seemed to be one of importance on the argument; but aside from this, we think that upon the facts of the case the subsequent creditors are to be let in on the ground that the settlement was made in contemplation of future debts. It has repeatedly been decided that in case of actual fraud as respects such creditors the deed will be declared void. Chopin vs. Peare, 10 Conn., 69; Gunn vs. Butler, 18 Pick., 218; Reade vs. Livingston, 3 Johns. Ch., 481; 1 American Leading Cases, 1; Sexton vs. Wheaton, supra; Hinde vs. Longworth, 11 Wheaton, 199.
If a voluntary conveyance is made with a view of becoming indebted, the fraudulent intent may be inferred from the fact that the grantor contracted debts immediately after he made it, and has not paid them. This circumstance is admitted in all the authorities already cited, besides many others, to be sufficient evidence of fraud against the persons with whom he incurred such debts, and to give them the undoubted right to have the deed set aside. There is some uncertainty as to what are the frauds of which subsequent creditors can take advantage, but the circumstance just referred to is admitted by all to be sufficient to establish the fraudulent intent.
Now, what are the facts here?
We have already seen that at the date of the conveyances-a larg'e portion of his scheduled liabilities had been contracted, and that his only property left was a stock in trade worth $2,100. Shortly afterward he incurred debts to merchants in Baltimore in the aggregate of nearly $2,500, apparently for goods in the way of 'his business, and in a period of less than four months his stock was reduced to the value of $100, *283 which, with the expection of a few articles of little value, constituted his whole property, and he claims it all as being exempt under the bankrupt-law. In the mean time he has paid $400 prior debts, and gives no reasonable explanation of what has become of all his other property. We cannot accept a general statement that it had been consumed in support of his family in so short a time. Not a single debt incurred since the conveyance has been discharged, nor has his preexisting indebtedness been reduced except to an inconsiderable extent. There is one circumstance in his testimony calculated to make an unfavorable impression: he declined to answer when and how he had disposed of his property. We barely state this, for it will not bear comment. Nor does he state any misfortune in business or other unusual occurrence by reason of which his means became so suddenly absorbed.
It cannot be supposed that a transaction so surrounded with evidence of turpitude can be either fair or honest.' If a debtor has been deprived of the ability to meet his obligations, every dictate of practical justice requires that he should be able to explain the unfavorable events which have led to his embarrassment. If he puts his property beyond the reach of his creditors without any valuable consideration, the inevitable inference is that a secret trust was intended for his own advantage, which is utterly inconsistent with any valid title being passed, and the whole transaction will be set aside as against, all parties intended to be affected by the fraud. We think the circumstances of this case conclusively show that the deed was directed against subsequent as well as prior creditors, and that it can, therefore, be avoided by both.
The remaining question is whether the transfer of the Eamsburg notes was also void as being made in fraud of creditors. The defendant, Lane, testifies that during the fall of 1871 he gave his wife the $2,500 invested in these-notes, and that he was then worth from $23,000 to $25,000 over and above all liabilities, and that his outstanding debts were not over $500; and that there was also due $1,000 to a building association which was a lien upon his property, and has since been paid by money borrowed from the Freedman’s Savings and Trust Company, which loan was secured by a *284 prior deed of trust upon the same premises as those acquired by Mrs. Lane in the deed from said Ward.
His brother was examined as a witness, and testified that his brother John was worth about $10,000 from 1870 to 1872 clear of all liabilities. Mrs. Lane, in her answer, avers that the money represented by the said notes was given to her in good faith two years previous to the institution of this suit, and over a year before the proceedings in bankruptcy. It is unnecessary further to examine the details of the proof, for they do not materially vary or contradict these statements.
Upon this showing, the case is manifestly a gift from Lane to his wife of the- money in question at a time when he was in affluent circumstances, and his indebtedness quite inconsiderable when compared with his fortune, and having an ample fund left for the payment-of what he owed.
Now, it is a well-settled principle of law that when a person is indebted in a small amount, and has ample means and is not .embarrassed in his circumstances, he may make a gift in favor of a wife and children, and it cannot be impeached for want of consideration. This point has been expressly decided by the Supreme Court in the two cases, already referred to, of Sexton vs. Wheaton, and Hinde vs. Longworth. The same doctrine was re-affirmed in Parish vs. Murphree, 13 How., 92, where the court says, “ to hold that a settlement of a small amouut by an individual in independent circumstances, and which if known to the public would not affect his credit, is fraudulent, would be a perversion of the statute.” Applying this principle to the case under consideration, it is quite clear that no fraudulent intent is proven as respects this gift. There is no proof that he contemplated any delay to his creditors in collecting the small amount he owed, and more than a year elapsed before he became insolvent.
We therefore think it was a gift made in consideration of love and affection by a party perfectly solvent at the time, and without fraudulent intent, and ought not to be set aside as void. That part of the decree which authorizes the complainants to receive and collect the said notes for the benefit of creditors must therefore be reversed for the reason just assigned, and the residue of the decree is affirmed,