SCHWARZ et al. v. LEE et al.  (No. 11605.)*

(Court of Civil Appeals of Texas. Fort Worth.
June 26, 1926. Rehearing Denied Oct. 23,
1926.)

1. Damages ⬤➞79(1)—Sum named in bond
will be treated as penalty, though designated
as liquidated damages, and recovery limited
to actual damage, if clearly ascertainable
from bond or agreements incorporated there-
in by reference.

If actual damage for breach is clearly ascer-
tainable from face of bond or agreements incor-
porated therein by reference, sum named in
bond, though designated as liquidated dam-
ages, will be treated as penalty and recovery
limited to actual damage, but if damages are
uncertain in nature, such sum, if not out of
proportion to and in excess of actual damages,
will constitute measure of recovery.

2. Damages ⬤➞78(1)—Sum of bond to perform
contract to drill oil wells for business trust
and pay stated sums to principals' cotrustee
held not a penalty, but liquidated damages.

Sum named in bond for performance of
contract to drill oil wells for business trust and
pay stated sums to principals' cotrustee *held*
not a penalty, but liquidated damages, recov-
erable by stockholders on principals' failure to
drill wells.

3. Damages ⬤➞79(1)—Full amount of bond
for performance of contract to drill oil wells
held recoverable on breach thereof, without
averment or evidence of actual damage.

Actual damages for breach of contract to
drill oil wells being indefinite and uncertain on
face of bond for performance thereof, full
amount of bond may be recovered without aver-
ment or evidence of actual damage, in absence
of showing that parties could have contem-
plated, at time of making contract, that dam-
ages would be less than such amount.

4. Damages ⬤➞163(3).

In action for breach of contract and bond
by failure to drill oil wells, burden was on de-
fendants to allege and prove such part per-
formance that cost of completing wells could
readily be shown to avoid liability for full
amount of bond.

5. Partnership ⬤➞108.

Generally, one partner may not sue anoth-
er at law on claim growing out of partnership
transactions until business is wound up and
accounts fully settled.

6. Mines and minerals ⬤➞101.

Suit by trustee and other stockholders of
business trust on bond and contract to drill oil
wells *held* not one for general partnership ac-
counting and settlement, maintainable only in
equity.

7. Partnership ⬤➞107—Partner may bring ac-
tion at law, not involving partnership ac-
counts, against copartner for fraud or on note
or other obligation, though transaction inures
to firm's benefit.

Action at law, unconnected with and not in-
volving partnership accounts, may be brought by
one partner against another on note or other
obligation given former by latter for valid
consideration, though transaction inures to ben-
efit of firm, or for fraudulent misconduct by
one partner toward other.

8. Principal and surety ⬤➞44—Principals'
fraudulent scheme to sell worthless stock held
no defense to stockholders' suit on contract
and bond to drill oil wells.

Principals' fraudulent scheme to sell
worthless stock *held* no defense to stockholders'
suit for breach of contract and bond to drill
oil wells, in absence of evidence that plaintiffs
had notice of principals' purpose to stay legal
proceedings against them by giving bond and
obtaining extended time to continue their fraud-
ulent practices.

9. Contracts ⬤➞140—Recovery on lawful con-
tract, incidentally related to illegal agree-
ment, will not be denied.

Court will not refuse to enforce lawful
contract supported by independent considera-
tion, though incidentally related to illegal agree-
ment; test being whether plaintiff requires any
aid from illegal transaction to establish case.

10. Principal and surety ⬤➞142.

Sureties on bond of trustees, fraudulently
selling stock in business trust, for perform-
ance of contract to drill oil wells, *held* liable
thereon, though innocent of actual fraud.

Appeal from District Court, Tarrant Coun-
ty; Bruce Young, Judge.

Action by Robert A. Lee and others against
H. H. Schwarz and others. From a judgment
for plaintiffs, defendants appeal. Reformed,
and affirmed as reformed.

McLean, Scott & Sayers, of Fort Worth,
and W. O. Davis, of Gainesville, for appel-
lants.

H. C. Wade, J. E. McGinness, and Joseph
F. Greathouse, all of Fort Worth, for ap-
pellees.

CONNER, C. J. The record discloses that,
in the early months of the year 1922, Rob-
ert A. Lee, Charles Sherwin, and H. H.
Schwarz executed and had recorded three
several instruments called declarations of
trust; to wit, one named General Lee Inter-
ests No. 1, dated January 3, 1922, another
named General Lee Interests No. 2, dated
February 9, 1922, and, finally, one named the
General Lee Development Interests, dated
April 12, 1922. The first was capitalized
for $25,000, the second for $18,000, and the
last for $250,000. The sole basis for the
capitalization of the General Lee Interests
Nos. 1 and 2 were contracts with the owner
of lands to assign the same to Lee, Sherwin,
and Schwarz as trustees, when paid for, but
the record fails to show that such owner
was ever paid the stipulated prices or ever
made assignments, as contracted for.
The capitalization of the General Lee De-
velopment Interests, so far as we can gather

from the record, was based on a drilling contract acquired by Sherwin and Schwarz upon some 6,100 acres of land near Roanoke, Denton county, Tex., the conditions of which were never fully performed.

Robert A. Lee was not an owner of any right in the property of the General Lee Development Interests and he had no pecuniary interest therein, except that of a mere employee who was to receive $50 per month as a drawing account and 10 per cent. of the net profits. Under the terms of his employment, he was to permit the use of his name in all advertising matter and perform such other services as Sherwin and Schwarz should direct, but he was not given any final or absolute control, nor was he the owner or holder of any stock, this having all been issued to Sherwin and Schwarz in accord with an agreement those persons made with Lee and Sherwin and Schwarz, as trustees, the consideration being a transfer of the Denton county drilling contract to said trustees for the General Lee Development Interests.

We next find that, in the latter part of November, 1922, Robert A. Lee, for himself and as trustee of the General Lee Development Interests, joined by N. J. Cary, filed a bill in equity in the District Court of the United States for the Northern District of Texas, seeking an accounting by Sherwin and Schwarz and the appointment of a receiver of the properties of the Development Interests. The petition was filed in behalf of the stockholders in the Development Interests as well as the petitioners, and, at great length, complained of Sherwin and Schwarz for failure to drill wells so as to save leases from forfeiture, and of misapplication of money collected in sales of stock, etc. The charges of misconduct and fraud were denied by Sherwin and Schwarz in an answer consisting of numerous exceptions and general and special denials. This suit in equity was dismissed, however, without a trial upon the merits, in consideration of an agreement and bond executed by and in behalf of Sherwin and Schwarz, which lies at the foundation of the action now before this court, as will hereinafter more fully appear.

The contract last mentioned recites the execution of the several declarations of trusts hereinbefore described, and that there were differences between Robert A. Lee, on the one hand, and Charles Sherwin and H. H. Schwarz, on the other, and that it was thought to be to the interest of those parties and of the stockholders in said trust estates that an understanding and agreement be reached, and then it sets forth the terms of the agreement in some 16 separate paragraphs or sections. In section 4 it was provided that Sherwin and Schwarz were to pay Lee $1,000 in full settlement of his claims and expenses pertaining alone to the General Lee Interests Nos. 1 and 2, and $75 to Lee's attorney in the suit in equity. A further provision is that Lee was to be paid $25 a week out of the funds of the General Lee Development Interests for his services to that association and $50 per month to secure legal advice. There were other provisions relating to Lee, such as that he alone should first receive all letters addressed to him, sign all letters issued in his name, and other things to be done not thought to be material and which therefore will not be particularly noticed.

Section 16 of the contract reads as follows:

"It is further agreed and understood and provided herein that the said H. H. Schwarz and Charles Sherwin shall at once enter into a good and sufficient bond, payable at Fort Worth, Tex., either with a surety company of with two or more good and sufficient sureties, payable to General Robert A. Lee, as one of the trustees of General Lee Development Interests, and all other stockholders, present and future, of the General Lee Development Interests, conditioned that said bond may be collected upon by the suit of General Robert A. Lee, or any other stockholder, for the benefit of all stockholders or other parties at interest, when default is made in any of the conditions and terms of said bond; that said bond shall be payable at Fort Worth, Tex., and conditioned as follows:

"(a) The legal jurisdiction for payment of said bond shall be at Fort Worth, Tex.

"(b) Said bond shall be in the principal sum of $25,000.

"(c) Said principals shall be bound to drill and complete on or before December 31, 1924, at their own expense, eight wells for oil or gas to the depth of the known oil sands of the territory or immediately joining that which is being drilled.

"(d) The leases, on which said wells are to be drilled, shall exist as long as oil or gas is produced in paying quantities, shall be procured at the expense of the principals herein out of the funds of the General Lee Development Interests, and shall thereafter belong to the General Lee Development Interests.

"(e) That the well now being drilled near Roanoke, in Denton county, Tex., shall be drilled and finished to a depth of 3,500 feet, unless oil or gas in paying quantities is discovered at a lesser depth.

"(f) Said bonds shall be approved by Robert A. Lee before it is binding under this contract."

Concurrently with the execution of the agreement, the following bond was executed and approved by Lee, to wit:

"The State of Texas, County of Tarrant.

"Know all men by these presents that we, H. H. Schwarz and Charles Sherwin, as principals, and the other signers hereto as sureties, all of the county of Tarrant, state of Texas, do hereby acknowledge ourselves held and firmly bound to Robert A. Lee, as trustee, for and on behalf of any and all stockholders—whether past, present or future—of the General Lee Development Interests, and any stockholder

therein, a joint-stock association heretofore organized by Robert A. Lee, H. H. Schwarz and Charles Sherwin, which instrument known as the Declaration of Trust of the General Lee Development Interests, is recorded in volume 742, page 176, Deed Records of Tarrant county, Tex., in the sum of $25,000, well and truly to be paid to said Robert A. Lee, trustee, for said stockholders, his successor, their heirs, executors, administrators, or assigns, to the payment of which sum we bind ourselves, our heirs, executors, and administrators, firmly by these presents.

"The condition of the foregoing obligation is that, whereas, the above-named principals, H. H. Schwarz and Charles Sherwin, have this day entered into a contract, obligation, and agreement with Robert A. Lee, trustee, and the stockholders generally, of the General Lee Development Interests, which said contract is of and concerning the duties and obligations of the said H. H. Schwarz and Charles Sherwin to the said stockholders, which said duties and obligations shall be completed within two years, as provided in the said contract, and said contract is marked Exhibit A, attached hereto, and made a part of this instrument and obligation;

"And, whereas, it is the intent and desire of the said H. H. Schwarz and Charles Sherwin to guarantee and secure the stockholders of the General Lee Development Interests in their faithful performance of the covenants, agreements, and obligations on the part of said Schwarz and Sherwin therein contained:

"Now, therefore, should the said H. H. Schwarz and Charles Sherwin comply with and carry out, or cause to be complied with and carried out, each and all of the terms, stipulations, covenants, and agreements contained in said agreement hereto attached, and which are therein set forth, according to the face, tenor, effect, and reading thereof, then this obligation shall become null and void, otherwise to remain in full force and effect.

"Witness our hands at Fort Worth, Tex., this the 22d day of December, A. D. 1922.

"[Signed]                     H. H. Schwarz,
                              "Chas. Sherwin,
                                   "Principals.

"[Signed]                     D. R. Soward,
                              "Ben Le Art,
                              "E. C. Young,
                              "G. A. Campbell,
                              "Wm. Schwarz,
                              "D. T. Lacy,
                                   Sureties."

With the foregoing outline of the history of this case as presented in the record, it will be now stated that the present suit was instituted in the district court of Tarrant county by Robert A. Lee, as one of the trustees of the General Lee Development Interests, and by N. J. Cary and Mrs. Olga A. Herzog, a feme sole, as stockholders in the General Lee Development Interests, suing, as such, for and on behalf of themselves and all other stockholders in said General Lee Development Interests, against H. H. Schwarz, Charles Sherwin, D. R. Soward, Ben Le Art, G. A. Campbell, E. C. Young, Wm. Schwarz, and D. T. Lacy, making profert of the contract and bond last above referred to,

charging the execution of the same, attaching them as exhibits to the petition, and averring that the contract and bond had been breached by the failure of H. H. Schwarz and Charles Sherwin to carry out the terms and conditions imposed thereby, particularly averring the failure to drill to the depth of 3,500 feet in Denton county, as they had obligated themselves to do and had wholly failed and utterly abandoned the drilling of the other eight wells, which, under the terms of said contract and bond, they were required to do. By reason of all of which the plaintiffs sought to recover the $25,000 stipulated in the bond as liquidated damages. The defendants Soward, Le Art, and Campbell were dismissed from the suit for want of service, but the other defendants named answered by numerous exceptions and to the further effect that the General Lee Development Interests was a fraudulent scheme and device to exploit the name of Robert A. Lee because of its similarity to the name of General Robert E. Lee of the Civil War, and create the impression that the plaintiff Lee was a member of the Virginia family, thus commercializing the name of Lee for mercenary and fraudulent purposes, and that the entire scheme known as the General Lee Development Interests and the contract and bond sued on, which was a part and parcel of the same, was a fraudulent scheme and device to represent oil leases and oil claims having no value as being of great value, and to sell, by means of misrepresentations and fraud, stock in said concern, representing it as being of great value when it, in fact, had no value whatever, and with no intent or purpose on the part of the trustees of said pretended trust to really develop or to produce oil or create anything of value. It was further pleaded that the bond had been executed without consideration. The trial was before the court without a jury, at the conclusion of which judgment was rendered in favor of Robert A. Lee, N. J. Cary, Mrs. Olga A. Herzog "for and on behalf of and for the use and benefit of the stockholders of General Lee Development Interests" in the sum of $25,687.50, together with all costs of suit, and the defendants have prosecuted a writ of error to this court.

Plaintiffs in error first insist that the judgment should have been rendered for them for the reason that there is neither allegation nor proof of actual damages to the plaintiffs in the suit. It is true, as urged, that there is a total absence of allegation and evidence of any actual damage that resulted from the numerous wrongs and failures with which Sherwin and Schwarz are charged, and it seems evident that the theory upon which the suit proceeded and the judgment was rendered is that the $25,000 specified in the bond declared upon constitutes liquidated damages, rendering averment and proof of actual dam-

ages unnecessary. It is this theory which plaintiffs in error most strongly contest. .

[1] By reference to the bond, it may be seen that it does not, in express terms, declare that the $25,000 shall constitute a fixed or liquidated amount to be paid as the damages in event of a breach of the conditions, but stipulations relating to the subject are not necessarily conclusive. In 5 Cyc. page 848, it is said:

"The measure of damages or amount of recovery in an action on a bond depends largely upon the intent of the parties, as expressed in the instrument. If it appears clearly that the sum mentioned therein is to be liquidated damages, then there may be a recovery of the whole amount, where such recovery is not inconsistent with the policy of the law. If, however, the sum mentioned was intended as a penalty, then the measure of damages should be the actual loss which has been sustained as a result of the breach, where this can be ascertained. Parties may stipulate for a certain sum to be paid as liquidated damages, and courts will not interfere where such sum is not unreasonably in excess of the actual loss or unjust or oppressive; but parties cannot evade the jurisdiction of the courts by the mere designation of a sum as liquidated damages, where it is, in fact, a penalty."

The rule would seem to be that if, from the face of the bond or agreements made parts thereof by reference, the actual damage for a breach is clearly ascertainable, then the sum named in the bond, however designated, will be treated as a penalty and the recovery limited to the actual damage. But if the damages be in their very nature uncertain, and it cannot be said that the sum named is out of proportion to and in excess of the actual damages, then the sum named will constitute the damage and measure of recovery. See, Collier v. Betterton, 87 Tex. 440, 29 S. W. 467; Cowart v. Connally & Co. (Tex. Civ. App.) 108 S. W. 973; Palestine Ice, Fuel & Gin Co. v. Connally & Co. (Tex. Civ. App.) 148 S. W. 1109; Ward v. Haren, 183 Mo. App. 569, 167 S. W. 1064; Walsh v. Methodist Episcopal Church South (Tex. Civ. App.) 173 S. W. 241; Gillespie v. Williams (Tex. Civ. App.) 179 S. W. 1101; Runnells v. Pruitt (Tex. Civ. App.) 204 S. W. 1017; Ford Motor Co. v. Cranford Auto Co. (Tex. Civ. App.) 206 S. W. 108; Bowden v. Southern Rock Island Plow Co. (Tex. Civ. App.) 206 S. W. 124; Chambers v. Fort Bend County, 14 Tex. 34; Wallace v. Terry (Tex. Sup.) 15 S. W. 35.

[2] Relying on this line of cases, it is insisted that the amount specified in the bond under consideration must be construed as a penalty, necessitating allegations and proof of actual damage, for the reason that it was executed to secure things of varying importance, indicating ascertainable actual damage, and the same sum is made recoverable for a partial or for a total breach. There is, at least, apparent force in this contention, for

the bond in terms, when construed literally together with the agreement referred to therein and made a part thereof, as above stated, apparently shows that $25,000 is to be paid for a failure to pay to Robert A. Lee the $1,000, the $25 per week, or the $50 per month, as specified in their agreement, as well as for the failure to drill wells as specified, and, if the bond and agreement be construed as an indivisible entity, it would, we think, under the cases hereinabove cited, follow that the $25,000 should be construed as a penalty, for in such case the actual damage, in part at least, is easily and certainly ascertainable, and it will not be inferred that it was in the contemplation of the parties that $25,000 was to be paid for a failure to make any one or all of the payments to which Lee was entitled by the terms of the agreement.

We have concluded, however, that the agreement is separable, and that it evidences a purpose to comply with demands of Lee, in which the stockholders in the General Lee Development Interests are not shown, by the record, to have any pecuniary right, and, at the same time, to secure the drilling of wells of vital importance to such stockholders, Lee not being one of them. We are not without authority, we think, in support of such a construction. In Parsons on Contracts, vol. 2, p. 659 (7th Ed.), it is said:

"It is a similar question—sometimes, indeed, the very same question—whether covenants are mutual, in such sense that each is as a condition precedent to the other. And also whether covenants or agreements be dependent or independent. By the very definition of them, if they are dependent, that is, if each depends on the other, the failure of one destroys and annuls the other. Or, if this dependence is not mutual, but one of them rests upon the other by a dependence which is not equally shared by the other, if that contract upon which this dependence rests is broken and defeated, the other, by reason of its dependence, is annulled and destroyed also. But they may be wholly independent, although relating to the same subject and made by the same parties and included in the same instrument. In that case, they are two separate contracts. Each party must then perform what he undertakes, without reference to the discharge of his obligation by the other party. And each party may have his action against the other for the nonperformance of his agreement, whether he has performed his own or not. Now, the law has no preference for one kind of contract over another; nor does it, by its own implication and intendment, make one rather than the other, and still less does it require one rather than the other. It may indeed be safely said that this question in each particular case will be determined by inferring, with as much certainty as the case permits, the meaning and purpose of the parties from a rational interpretation of the whole contract."

In a note to the case of Goldsborough v. Orr, 8 Wheat. 217, 5 L. Ed. 600, we find the following announcement:

"Covenants may be wholly independent, although relating to the same subject and made by the same parties and included in the same instrument. In that case, they are two separate contracts. Each party must then perform what he undertakes, without reference to the discharge of his obligation by the other party, and each party may have his action against the other for the nonperformance of his agreement, whether he has performed his own or not."

It is recited in the condition of the bond that the obligation is to stockholders, and in the contract that wells shall be drilled, etc., and, as it seems to us, the bond and agreement, construed as a whole, in the light of the character of the subject-matter treated and of the other circumstances, amounts to an agreement to drill wells, as specified, for the benefit of the stockholders in the General Lee Development Interests, which should be treated as independent of the agreements for Lee's benefit, and that such stockholders have a cause of action and may sue upon the breach or failure to perform such agreement. If so, the trial court correctly construed the sum specified in the bond as a liquidated demand and not as a penalty, for it certainly cannot be said that the damages resulting to the stockholders because of the failure to drill, as specified, is apparent, certain, or readily ascertainable. The evidence shows that the well near Roanoke was drilled to a depth of approximately 2,500 feet, but it was never completed to the contract depth so as to secure the leases dependent thereon, and no effort appears to have been made to drill any one or more of the eight additional wells. In this connection, we call special attention to the cases of Walsh v. Methodist Church, 212 S. W. 950, by Section A of our Commission of Appeals, and Southern Surety Co. v. Petrolia Land Co., 252 S. W. 204, by the San Antonio Court of Civil Appeals. In the first case, the Commission said:

"Where it cannot be ascertained from the face of the contract that the damages stipulated to be paid in case of a breach are excessive, and it cannot be determined from evidence whether the stipulated amount reasonably approximates the actual damages, the provision cannot be construed as a penalty."

And, in the second case, it was said:

"The liability on a bond conditioned upon the performance of a contract to drill an oil well on complete default was the full amount of the bond, though no actual damages to the payee were proved, and though the bond did not designate the amount to be paid as liquidated damages."

[3, 4] It is argued that to justify the imposition of the full $25,000, the burden was upon appellees to allege and prove that the actual damage for failure to drill was incapable of ascertainment, and that, inasmuch as there was neither averment nor evidence on this point, the judgment should have been for appellants. We think, however, as hereinbefore indicated, that it is apparent on the face of the bond and from the nature of the subject that the actual damages for a failure to drill oil wells is indefinite and uncertain, and nothing in the record indicates that the parties could have contemplated, at the time of making the contract, that the damages for failure to drill as shown would be less than the amount specified in the bond. It is to be remembered that the case before us is not one of partial performance, but one of a total failure. Had the facts been that there was such part performance as that the cost of completion could readily be shown, the burden, we think, was upon appellants to so allege and prove. See Collier v. Betterton, 87 Tex. 440, 29 S. W. 467, and Walsh v. Methodist Church (Tex. Com. App.) 212 S. W. 950.

[5-7] Appellants also urge, in effect, that the action is one between partners for a partnership settlement which can only be had by a suit in equity for an accounting, etc. It is true, as contended, that the record shows that the General Lee Development Interests is insolvent and long since has ceased to operate, and that, as a general rule, one partner may not sue another in an action at law on a claim growing out of partnership transactions until the business is wound up and the accounts fully settled (30 Cyc. pp. 461–710), but the present suit is not one for a general accounting and settlement, but one based on a written obligation which authorizes Lee, as trustee, or a stockholder to sue upon broken conditions, and we know of no authority which forbids such a suit. On the contrary, if we assume, as we shall only do for the purpose of the argument, that the General Lee Development Interests was so organized and constituted as to make Sherwin, Schwarz, Lee, and the stockholders partners, under the ruling of our courts relating to associations of the kind, it is nevertheless true that:

"Where the cause of action is not connected with partnership accounts and their consideration is not involved, one partner may sue another at law. Such an action may be brought on a note or other obligation given by one partner to another for a valid consideration, although the transaction may inure to the benefit of the firm, or for fraudulent misconduct by one partner toward another." 30 Cyc. 466.

See, also, Lane v. Tyler, 49 Me. 252; Anderson v. Robertson, 32 Miss. 241; Wilson v. Wilson, 26 Or. 251, 38 P. 185.

In the Mississippi Case, it was expressly held that a partner to whom a note has been made payable by another partner, for the benefit of the partnership, may sue thereon in his own name. To the same effect is the holding in the Oregon Case, and we conclude that there is no substantial merit in the contention of plaintiffs in error last above noted.

[8] Nor do we think there is any merit in the further contention that the contract and

bond were executed in furtherance of a fraudulent scheme to sell worthless stock, and hence unenforceable, particularly against the sureties not shown to be cognizant of the fraudulent purpose. It is true that the record indicates an amazing case of fraud on the part of Sherwin and Schwarz. In the most artistic and alluring terms Lee was falsely represented in letters, circulars, etc., to be related to the revered General Robert E. Lee and actuated by the same high sense of honor so characteristic of that great man; that he was a noted geologist of high repute and of long experience in the location and development of oil fields and, as such, had brought wealth to many men; that he had located near Roanoke in Denton county, one of the greatest oil structures in Texas; that Lee had never drilled a dry hole, etc. Lee was not a geologist, had no repute as such among geologists, never drilled a well of any kind, or brought riches to any one, so far as the record shows, and the Roanoke section appears to be purely what is termed "wild cat" territory without any indication of an oil structure. Other false statements and statements having but slight foundation in fact were made relating to the ownership of leases, etc., which, considered together with the circumstances referred to, undoubtedly support the contention of plaintiffs in error that the scheme was a fraudulent one. Indeed, it was proved on the trial below that Lee, Sherwin, and Schwarz were each convicted in the United States District Court of this district upon six separate counts charging fraud during their operation of the concern under consideration.

[9] But we do not think it follows that, in this case, such fraud can be accepted as a defense which will relieve either principal or surety upon the bond declared on. The cases cited in support of the contention are Hunstock v. Palmer, 4 Tex. Civ. App. 459, 23 S. W. 294, Edwards County v. Jennings, 89 Tex. 618, 35 S. W. 1053, and Howard v. Smith, 91 Tex. 8, 38 S. W. 15. In the first case, a lessor was denied a recovery of rent for premises to be used for purposes of prostitution, he being cognizant of the immoral purpose. In the other cases, recoveries were sought upon contracts of municipal bodies which they were without power to make. In each of the cases, a recovery was dependent upon an enforcement of the illegal contract. In all such cases the court will refuse its aid. But the rule has no application where there is a new contract, not unlawful within itself, supported by an independent consideration, even if incidentally related to an illegal agreement. The test is thus stated by our Supreme Court, in the case of Floyd v. Patterson, 72 Tex. 202, 10 S. W. 526, 13 Am. St. Rep. 787, to wit:

"The test whether a demand connected with an illegal act can be enforced is whether the plaintiff requires any aid from the illegal transaction to establish his case."

The court further said:

"When the plaintiff shows that the defendant has received of a third party money for his use, the law from the naked fact implying a promise, the case is made out without going into the illegal transaction, and the defendant will not be permitted to set up the illegality of the original contract in order to defeat a recovery."

See, also, Simkins on Contracts (3d Ed.) pp. 378, 379, where the subject is discussed and numerous authorities are cited.

[10] In the case before us, the makers of the bond were under no legal inhibition and the apparent and declared purpose was to secure performance of that which the principals were legally and morally bound to do. If there was a purpose on the part of the principals to thus stay the legal proceedings in the District Court of United States and obtain extended time in which to continue their fraudulent practices and acquire unlawful gains, there is nothing to show that the beneficiaries in the bond (the stockholders) had notice of any such purpose, and they, at least, are entitled to recover according to the stipulation. It is urged that the sureties on the bond are innocent of the frauds proved and should be discharged, but we think it manifest that there is no merit in this contention. However innocent of actual fraud, they protruded themselves into the fraudulent purposes by executing an obligation in aid of the fraudulent actors, thus making themselves parties therewith.

The record discloses that Sherwin and Schwarz, as a result of their fraudulent practices, secured not less than $120,000 by the sale of shares of stock in the General Lee Development Interests, of which defendant in error N. J. Cary owns 11,000 shares of the par value of $1 each, and that defendant in error Mrs. Olga A. Herzog owns 1,137 like shares. It is accordingly, finally, and for the reasons noted, ordered that the judgment of the trial court decreeing a recovery against H. H. Schwarz and Charles Sherwin, as principals, and D. T. Lacy, E. C. Young, and William Schwarz, as sureties, for the sum of $25,000, with interest thereon at the rate of 6 per cent. per annum from January 1, 1925, and costs of suit, with award of execution, for the use and benefit of the stockholders of the General Lee Development Interests, including N. J. Cary, of Ithaca, Ill., and Mrs. Olga A. Herzog, a feme sole, of Atlanta, Ga., be and the same is hereby affirmed. But said judgment is reformed in the following respects, to wit:

By reason of the fraud perpetrated by plaintiff Robert A. Lee and H. H. Schwarz and Charles Sherwin, none of those parties shall be entitled to participate in said recovery, as stockholders or as assignees of

stockholders. It is further decreed by this court that said recovery is for the sole and exclusive benefit of the innocent bona fide purchasers for value, of capital stock in the General Lee Development Interests, including N. J. Cary and Mrs. Olga A. Herzog, and the heirs, legal representatives, and assignees of such purchasers other than the said Robert A. Lee, H. H. Schwarz, and Charles Sherwin; all such purchasers to share in such recovery on a pro rata basis according to the amount of stock so purchased.

And all persons claiming as such stockholders, their legal representatives, or assignees, shall have the right to establish their claim or claims in the trial court from which this appeal was prosecuted to the satisfaction of the judge thereof, after due notice given to them in due manner and time to be prescribed by him; and, when all such claims are so established, said judge shall order the same paid out of the funds remaining on hand subject thereto, to be deposited in the registry of said court, as decreed in the court below, after payment of costs of distribution and costs of collection, including a reasonable attorney's fee, to be fixed by the trial judge.

This judgment will be certified to the trial court for observance. All costs of this appeal are taxed against plaintiffs in error.